CURRIER v. TRUSTEES OF DARTMOUTH COLLEGE et al.

(Circuit Court, D. New Hampshire. December 26, 1900.)

COLLEGES—LIABILITY FOR INJURY TO STUDENT.

A college, by reason of its eleemosynary nature and its relation to its students, is not liable for a personal injury to a student caused by negligence of the superintendent of college buildings in clearing land owned by the college preliminary to erecting thereon a heating plant for college purposes.

Sargent & Niles and Edward S. Spaulding, for plaintiff.
Streeter, Walker & Hollis, for defendants.

ALDRICH, District Judge, in directing a verdict for Dartmouth College, said orally to the jury:

This is a suit by a student of Dartmouth College to recover $50,000 for personal injuries sustained through the alleged careless throwing down of a chimney by the superintendent of college buildings, and the suit is against both the college and the superintendent, who did the work. The injured student, upon notice by the superintendent that the chimney would fall at a given time, and that kodaks might be brought, was in the vicinity without a kodak, and by reason of curiosity merely; and neither willful nor wanton negligence is claimed against the college or its superintendent. At the conclusion of all the evidence the defendant moves that a verdict be directed in favor of Dartmouth College on the ground that it is an eleemosynary corporation, organized and managed solely for the administration of a public charity, and doing no business for private gain, and that it is not liable for negligence to a person who accepts its bounty. So far as the evidence goes in this case, the board of managers of Dartmouth College intrusted the work of clearing buildings, in connection with which there was a chimney, from a tract of land which the college owned, and on which was to be erected a heating plant for college purposes. This work was done on grounds of college health, necessity, and sanitation, and there is no question in my mind but that it was in furtherance of the chartered trust. The evidence is all one way that the trustees discharged the obligation upon them, if such obligation exists in respect to a college of this character, to select a competent servant for such purpose, because the work, under

general instructions to clear the land for a heating plant, was intrusted to their superintendent of buildings, who was a civil engineer, and had had several years' experience under the eye of the management in practical oversight of the construction and care of college buildings and other property; and the only evidence, if any, tending to show that he was incompetent or negligent relates to a detail of the work,—the particular alleged negligence, that of improperly and negligently tipping over the chimney which injured the plaintiff, who was a student. The administration of a trust like that under the Dartmouth College charter is at least in a sense charitable, and in a sense paternal. The college has existed for 130 years, during which time it has not been understood that an institution of this character is liable in tort for an injury like the one in question; at least, such liability has never before been asserted. There is no statute or judicial decision in New Hampshire declaring that public policy requires that the doctrine of tort liability should be extended to such institutions. The public policy of the state, therefore, though not so expressed, as in Massachusetts by judicial decision as to hospitals, or by legislative enactment as in Rhode Island, must be accepted, as against the liability of an institution of this character. The common law does not furnish a remedy in tort for every injury. While the general rule is recognized that all individuals and all corporations who own property and put forces in motion are liable for negligent use to the injury of others, there are several exceptions,— as, for instance, there is no remedy in tort against the federal government for negligent injury; against the state for injury resulting from negligent conditions; against towns for injuries resulting from negligence in not keeping their highways in safe condition, unless expressly made liable by statute; against a city in favor of a child injured by the unsafe condition of a schoolhouse stairway (Hill v. City of Boston, 122 Mass. 344); against a judge who, in the exercise of his duty, without investigation, directs a jury to retire to a room which may turn out to be unsafe; against an arbitrator for negligence in the discharge of his duty; against a master for the negligence of a fellow servant; and perhaps not in a case of father against members of his family, and members of a family against the father, for negligence, as for maintaining a negligent stairway. A personal injury is always a misfortune, and a personal injury is no less an injury because it results from a negligent condition of the steps of the capitol at Washington, in the post office at Concord, or on the stairways of the state capitol at Concord, rather than at a college, yet legal redress by action of tort for such negligence does not exist under the law.

In the hurried examination which I have made of this question, I cannot do otherwise than accept the reasons in the situation presented as stronger against tort liability for personal injury than those existing in hospitals; for a student who enters college submits himself, in a sense, morally, physically, and intellectually, to the college management and the college discipline,—in other words, he becomes a part of it,—while such paternal relations do not exist in the case of a hospital. It is asserted, and not denied, that there is no American

or English case where the liability of a college in tort for personal injuries has been held to exist. I have not made an examination which will verify this statement; but, if it is true, it is significant as to the understanding of the profession and the public in this country, where colleges have existed for nearly if not quite three centuries, and in England, where they have existed for centuries more. Authorities holding that there is a remedy by mandamus to compel college trustees to properly administer, and execute a trust are not in point upon the question under consideration. All law is founded on supposed public policy. Public policy declares that the general government shall not be liable in an action of tort, and that a state shall not be so liable, and that, if relief is had, it shall be through the congress of the United States in the one instance, and through the state legislature in the other. This, in part, is because governments, which are run, not for money-making purposes, but for the protection of the public, should not be sued in the courts for tort, and because it would be subversive of government. Public policy declares that judges and arbitrators shall not be liable, and that members of a family, occupying the same household for the same beneficial reasons, shall not be liable one to the other. These instances are not cited as positively in point, but to show that, notwithstanding the general rule of liability, the law does not furnish redress by action of tort for every injury.

At the outset, whether a right shall be created and established, or whether a right shall be extended, depends upon the question whether rules of justice and public policy require it to be done. The first redress was to return force by force, but, as civilization advanced, legal redress was given, in the nature of damages; and, by the growth of the common law and the statutes, the right of recovery has been extended to one condition and another. If such right exists in respect to corporations like the one in question, there is legal redress. The liability, however, in a given jurisdiction, is not an inherent and natural liability, and the right of the party injured to have relief does not exist as an absolute right until created by legislative enactment or judicial decision. In the absence of a statute or a judicial decision in New Hampshire, and none being cited from other jurisdictions, and as the plaintiff relies upon the general rule as to liability and supposed analogous decisions, I do not wish to be the first judge to declare such right of recovery in New Hampshire. If the right of recovery exists in this class of cases, the right extends to place, as chapel, lecture and recitation rooms; to machinery, appliances, and materials; experiments with chemicals and electricity; conditions of the campus and the playgrounds, as to smoothness, ice, and snow, where students are invited or permitted to go for exercise and college sports and games. In my view, it is extremely doubtful whether the personal injury liability law is understood to extend to institutions of this kind. Counsel for the plaintiff in effect claim that the general rule of tort liability applies proprio vigore, or ex rigore juris, unless it clearly appears that the charterer intended otherwise. Is this so? Should the rule of liability and right of recovery be held to exist unless it clearly appears by the charter that the charterer so

intended? Do not legal history and long acquiescence fairly tend to establish the interpretation of nonliability? The acquiescence of the people of this country and of England for so many centuries would seem contrary to an understanding that such liability exists. The plaintiff seems to view a rule of nonliability as involving a further limitation upon the general rule of liability, and as furnishing another exception thereto. I do not take this view. I think I am, in effect, asked to extend the commonly accepted understanding of the rule to include situations not heretofore understood to come within the liability rule in tort for personal injuries. At least, there is a strong query whether such rule would not be subversive and destructive of the fundamental relations existing between college and student, and query whether the relation phase of the situation is not more significant and controlling than that of the trust phase of the question presented, and whether, on the whole, the true rule is not that the student, by entering college, assumes the risk incident to the quasi charitable and quasi paternal management of such institutions. How it might be with other relations, or in respect to outside college properties, like the Lowell property or the Dartmouth College grant in Pittsburg, it is not necessary to consider. I have only given this question such hurried consideration as a jury trial permits. If I am wrong, the court of appeals will set the question right.

The jury is directed to render a verdict for the college. The plaintiff excepts. That part of the motion asking that a verdict be directed in favor of McKenzie, the superintendent, is not granted, and the defendant excepts.