### CURRIER v. TRUSTEES OF DARTMOUTH COLLEGE.

(Circuit Court of Appeals, First Circuit.  May 29, 1902.)

No. 380.

1. APPEAL—REVIEW—DIRECTION OF VERDICT.
   Whitney v. Railroad Co., 102 Fed. 850, 43 C. C. A. 19, 50 L. R. A. 615, applied to the effect that a defendant in whose favor a verdict has been rendered by direction of the court is entitled to support such verdict,

---

¶ 1. See Appeal and Error, vol. 3, Cent. Dig. § 3406.

on a writ of error, upon any ground which was fairly presented in his motion therefor, regardless of the particular ground which determined the action of the court.

**2. PLEADING—ACTION FOR PERSONAL INJURY—VARIANCE.**

A declaration in an action against a college corporation to recover for a personal injury, which alleges as the basis of the suit that plaintiff contracted with defendant to furnish him a collegiate education, and a safe and suitable lodging place, and safe and suitable grounds, buildings, and appliances for obtaining healthful recreation, in consideration of certain payments by plaintiff to defendant, necessarily grounds the right of recovery on a breach by defendant of some duty it owed plaintiff as a collegiate student; and such declaration is not supported by evidence showing that plaintiff was injured by the falling of a large chimney on the grounds of defendant, which was being torn down by its orders, that plaintiff was not present at the place in the course of his collegiate duties nor by defendant's invitation, but that it was a holiday, and he was there, with others, as a voluntary spectator, to see the falling of the chimney.

**8. NEGLIGENCE—TEARING DOWN OF STRUCTURE—LIABILITY FOR INJURY OF SPECTATOR.**

Neither would such evidence warrant a recovery by plaintiff on any state of pleading, unless it was further shown that his injury was caused by wanton or willful acts of defendant.

**4. SAME.**

Whether Powers v. Hospital, 109 Fed. 294, 47 C. C. A. 122, applies to defendant corporation, quære.

In Error to the Circuit Court of the United States for the District of New Hampshire.

For opinion below, see 105 Fed. 886.

Edward C. Niles and Edmund S. Spalding (Harry G. Sargent, on the brief), for plaintiff in error.

Frank S. Streeter, for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. In Powers v. Hospital, 47 C. C. A. 122, 109 Fed. 294, this court held that that action, based on the alleged negligence of a nurse employed by the hospital, could not be maintained in behalf of one of its patients. The case now before us the defendant claims is within the principle of our former decision. The plaintiff undertakes to distinguish the two on the alleged ground that in Powers v. Hospital there was no negligence on the part of the defendant in employing the nurse, while in the case at bar there was negligence in employing the person through whose want of skill the plaintiff maintains the injuries arose.

The plaintiff alleges as the basis of his suit that at the time of the injury out of which the action arose he was "a student in the institution conducted by the defendant corporation,"—that is, its college,—"having contracted with the defendant to furnish him a collegiate education, and a safe and suitable lodging place, and safe and suitable grounds, buildings, and appliances for obtaining healthful recreation, in consideration of certain payments of money made to the defendant by the plaintiff." These allegations necessarily involve the proposition that the plaintiff's suit grows out of his relation as a

collegiate student. In this respect, although there is a subsequent departure in the declaration, yet it is clearly so framed that the action would not lie unless the plaintiff proved a breach of an alleged contract to furnish him with a collegiate education, with a safe and suitable lodging place, and with safe and suitable grounds, buildings, and appliances for healthful recreation. In other words, the declaration lays no basis for a suit unless there was a breach of the duties the defendant owed the plaintiff as its collegiate student.

The case went to a jury, and, after it had been closed on both sides, the defendant moved that the court direct a verdict in its favor on several grounds, which were stated at length in its motion. We need specify only four. One was that on all the evidence the jury could not properly find a verdict for the plaintiff. Another was that there was no evidence that the injury was caused by the violation of any legal duty which the defendant owed the plaintiff. Another was that the plaintiff was present at the place of the injury without invitation, and by mere permission, and for the gratification of private curiosity; and that under such circumstances the defendant was under no obligation to exercise ordinary care for his protection, and was merely holden to refrain from willful or wanton injury, while there was no evidence that the injury was willfully or wantonly inflicted. Several other grounds stated were substantially to one effect, namely, that the defendant is an eleemosynary corporation, "organized and managed solely for the administration of a public charity, and doing no business for private gain," and that, therefore, it "is not liable for negligence in the distribution of its charity to the person who accepts its bounty." The court directed a verdict for the defendant, which the jury returned in the following form: "By direction, and under order of court, the jury find that the defendant college is not guilty in the manner and form as the plaintiff has declared." To all this the plaintiff seasonably excepted, and his exceptions were allowed. The learned judge, in the order allowing the exceptions, stated as follows:

"Bill of exceptions allowed, and, as the defendant desires to have all the evidence printed, to the end that it may present the question whether there is any evidence of negligence in warranting a verdict for the plaintiff, and as I do not understand that I ruled upon that question, or that the defendant has an exception, it is ordered that the defendant pay the increased expense of recording, copying, and print, viz., one-half."

It is to be noted that the defendant, in its motion for a verdict in its behalf, did not, in terms, call the attention of the court to that portion of the pleadings which we have extracted; but the proposition which this makes the necessary basis of the suit was sufficiently brought to its attention by that part of the motion which insisted that the plaintiff was present at the place of injury without invitation.

This brings us at once to a proposition which we must consider at the outset. Although the circuit court apparently assumed that the only question which came up on the writ of error was whether the character of the defendant as an eleemosynary institution would defeat the action, and, although the plaintiff maintains that that is the only issue on appeal, yet the defendant claims that all the defenses

brought out in its motion are before us, and that it is entitled to hold its verdict, provided either of them was well laid.   It is true that this court does not hesitate to seize upon anything in the nature of a waiver to bar us from adjudicating any question not considered in the court below, and that it refuses to broaden the case when so doing might lead to injustice.   Therefore, with reference to a motion to direct a verdict, if the party in whose behalf it is directed specifically limits the grounds of his motion, he is ordinarily held, on appeal, to have waived everything else, unless it is clear that the new grounds on which the verdict is sought to be sustained on error could not have been in some way covered if they had been called to the attention of the adverse party at the time the motion was heard.   In the present case there was no waiver, because, in the light of the explanation which we have made of the claim, made at the trial, that the plaintiff was present at the time of the injury without invitation, the propositions which we will have occasion to consider were seasonably brought to the attention of the court and the plaintiff.   Therefore there is no reason why we should not apply the general rule that on a writ of error the only things before the appellate court are the verdict and the order directing it, while the reasons which operated on the mind of the court below are no part of the record.

We went over this matter in Whitney v. Railroad Co., 43 C. C. A. 19, 102 Fed. 850, 50 L. R. A. 615, and we there showed that such was the settled practice.   Bolles v. Outing Co., 175 U. S. 262, 268, 20 Sup. Ct. 94, 44 L. Ed. 156, would be misleading on this point unless carefully examined.   That case came up on exceptions on account of the exclusion of evidence.   Under these circumstances the court held that the propositions raised before it by the defendant could not be considered, because it had sued out no writ of error.   The court showed no intention of overruling or qualifying its prior decisions, which guided us in Whitney v. Railroad Co.   Appeals are governed by different rules, for which the authorities cited in Bolles v. Outing Co., at page 268, 175 U. S., page 96, 20 Sup. Ct., 44 L. Ed. 156, furnish examples. Our position is precisely in harmony with the expressions in Peck v. Heurich, 167 U. S. 624, 629, 17 Sup. Ct. 927, 42 L. Ed. 302.

In Powers v. Hospital, ubi supra, we considered an eleemosynary institution in the strict sense of the expression, and we showed that the defendant in that case must be held to belong to that class, notwithstanding under some circumstances it received partial compensation from some of those who accepted its charity.   It seems difficult to conceive of any foundation for a proposition that, aside from the exceptional liability which the common law has long imposed on surgeons and physicians, any relation involving a legal liability for negligence can grow out of the acceptance by either individuals or institutions of the sick, or of orphans, or of the poor, solely for the purpose of doing charity.   To hold, however, institutions like this at bar as in the same class might be to go further than we went in Powers v. Hospital.   The provincial charter, from which the trustees of Dartmouth College derive its corporate existence, is found at length in Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629.   An examination of it will show that the corporation had, at its origin, a

double purpose: First, that of "spreading Christian knowledge among the savages of our American wilderness," and "the education and instruction of the youth of the Indian tribes,"—which may be regarded as strictly eleemosynary; and, second, "the education of English youth and any others." The latter purpose is, perhaps, the only one that survives. At any rate, it is in the light of that purpose that we are asked to consider the case before us.

The charter provided "that Eleazer Wheelock, doctor in divinity, the founder," should be the president, "to have the immediate care of the education and government of such students as shall be admitted into said Dartmouth College for instruction and education." This expression not only aids to illustrate the fundamental purposes of the institution, but may throw some light upon other questions presented to us. The charter also recognizes the expectation, which the history of the college has realized, that it would be largely, if not wholly, endowed by private charity. In this respect the defendant takes on one phase of an eleemosynary institution. It also comes within that class recognized by the statutes of Elizabeth as public charities. Therefore, in the course of the several opinions which were delivered in Dartmouth College v. Woodward, ubi supra, the college was styled a "charity school," an "eleemosynary institution," and a "private charity," although, so far as its purposes had relation to the statutes of Elizabeth, it was also recognized as a "public charity." All these expressions might well be used, and yet be far from determining that the defendant, for the purpose of legal liability with reference to the ordinary rules of negligence, is of the same class as an institution founded for the care of the sick or insane, or of orphans or foundlings. The fact that the plaintiff enjoyed, by way of scholarships, the munificence of its endowment, does not determine the fundamental question involved, any more than did the fact that the plaintiff in Powers v. Hospital was what is known as a "paying patient." In one case, as in the other, the general purposes of the institution must ordinarily be the determining feature, and not the varying circumstances peculiar to particular inmates.

While, with reference to the ordinary relations between an inmate of a hospital for the sick and the hospital, there may be nothing which the law recognizes as rising to the nature of a contract, the reverse may be true, ordinarily, with educational institutions. On the one side is the institution; on the other the student, or his parent or guardian, stipulating for his education for a valuable consideration to be paid therefor. Nevertheless, there are difficulties of a serious character, as suggested by the learned judge in connection with the disposition of this case in the circuit court, which render it apparently contrary to the fundamental notions of justice to apply to institutions of the character of the defendant the ordinary rules with regard to negligence and reasonable care to their full extent. As well suggested by him, is the institution liable for some mistake of some professor in conducting a difficult experiment in the chemical laboratory, or of an assistant to the professor, when, by the very nature of things, assistants are somewhat largely inexperienced? Does the law require that all the appurtenances of a gymnasium attached to an educational institu-

tion shall be regarded with the same strict rules as those of a manu-
facturing establishment?   Our institutions of learning are commonly
known as often poorly endowed, and in the receipt of no profits, and,
at the most, of only a moderate income, and therefore often disen-
abled from making use on their premises of modern appliances for
safety.   Are they liable to one who enjoys their beneficence, knowing
that such is their frequent condition, as ordinary business corporations
are liable?

On the one hand and the other, these considerations press on us,
leaving the solution a difficult one, whether it be as to the proposition
that the rule of Powers v. Hospital applies, or as to some modified
proposition that at least the ordinary tests of reasonable care must be
qualified in some way to meet the peculiar conditions pertaining to in-
stitutions of this character.

However, the consideration of the particular facts of this case will
show that they will not permit us to determine the difficult questions
which we have suggested.   The pith of the occurrences, as put by the
plaintiff, is that one McKenzie, at the time of the injuries which the
plaintiff suffered, was employed by the defendant as inspector of build-
ings, the title being subsequently changed to superintendent of build-
ings; that in this capacity he had general supervision of the college
grounds and buildings, under the general and special instructions of
the trustees; that the defendant had purchased a tract of land adjoin-
ing its grounds, on which stood a disused high chimney, the same hav-
ing been partly acquired for the purpose of erecting a heating station
to supply various buildings, including chapel, library, gymnasium,
recitation halls, and dormitories, and also a building owned by the de-
fendant, and leased for hotel purposes, and two business blocks owned
by the defendant as a matter of investment; that the destruction of the
chimney was a necessary preparation for the erection of the heating
station; that a committee, of whom the president was one, had been
intrusted by the defendant with the general supervision of its lands and
buildings, and had instructed McKenzie to take down the chimney,
but left the manner of his doing it entirely to his discretion; that
McKenzie was not a man of proper skill to do work of that character;
that that fact was known to the defendant, or should have been; that
he was taking an undergraduate course in the college of the defend-
ant; that the chimney was 68 feet high, and weighed about 60 tons;
that it stood in close proximity to a number of the college buildings,
and near several paths commonly traveled by students and others, and
frequently passed over by the plaintiff; that the students were free to
go wherever they pleased about the college grounds, and that the
plaintiff so understood it; that the method of taking down the chim-
ney by McKenzie was unsuitable and unsafe; that, when preparations
had been made to take it down, he had caused to be posted on the
college bulletin boards the following notice, signed by him:   "The old
gas-house chimney will fall at about 1:30.   Come, and bring kodaks!"
and that the plaintiff saw this notice, and, relying on it, he went to the
place where the chimney stood.   It is clear that he was there merely
as a matter of curiosity, and in response to the notice.   The afternoon
was a holiday, and college duties were suspended.   When the plaintiff

reached the place, he found there 200 or 300 people, including the president, professors, and townspeople, moving about from place to place; and, while he was observing the work of taking down the chimney, it fell, scattering some portions an unexpected distance, some of which struck him.

There is much which suggests that the injury came about in such a peculiar manner that it could not be said to be the proximate consequence of any want of skill on the part of McKenzie, if there was such; and the record before us is full of denials that McKenzie lacked skill, or that the defendant was lacking in reasonable care in employing him. Some of these issues may properly be before us; but, as the case is easily disposed of otherwise, we need not consider them.

We should observe that the presence of the president in the neighborhood of the chimney at the time it was taken down is an immaterial fact. While, as we have seen, the charter provided that he should have immediate care of the education and government of the students, yet his presence on this occasion had no relation thereto. He attended merely as one of the mass of spectators. He had no connection with the invitation given by McKenzie. Had it been otherwise, or if the record had shown that he had any reason to apprehend danger, the provision which we have cited from the charter might have required us to go into the case further, because the powers, and the consequent duties, which it vested in and imposed on the president, are so unqualified that the defendant might be especially affected by the exercise of them, or the want of exercise of them, under circumstances we have now no occasion to consider.

The invitation was a gratuitous act on the part of McKenzie, and it had no relation whatever to his employment by the defendant, or to his agency in its behalf. It was addressed to members of the governing boards, professors, students, and townspeople, to all as individuals, without regard to the peculiar status of any of them. The plaintiff was on the premises without invitation, express or implied, from the defendant, the same as all others were there, having no more right growing out of the matters before us than the townspeople. So far as this issue is concerned, he bore no relation to the defendant as a student, any more than McKenzie, in his employment of taking down the chimney, stood as a mere undergraduate. Therefore the facts have no relevancy to the matters set out in the declaration. Moreover, on no amended state of the pleadings could we hold the defendant legally responsible for the plaintiff's injuries, because, under well-settled rules of law, too often stated to need to be repeated here, he was a mere looker-on, of the class of those who must take care of themselves, except as against wantonness or willfulness, or except under peculiar circumstances of some undisclosed danger, none of which things are suggested in the case at bar.

The judgment of the circuit court is affirmed, and the defendant in error recovers the costs of appeal.