Argued February 15, decided March 12, 1912.

# HILL *v.* TUALATIN ACADEMY.

[121 Pac. 901.]

EVIDENCE—JUDICIAL NOTICE—STATUTES.

1. Under Section 729, L. O. L., declaring that public and private official acts of the Legislature are judicially known, proof of the incorporation of a university by a special act was not necessary in an action against the university.

CHARITIES—TORTS—LIABILITY—"CHARITABLE INSTITUTIONS."

2. Special Laws, January 13, 1854 (page 30), incorporating an institution of learning for instruction in science and literature, and providing that the income of the capital stock shall be appropriated only for the benefit of the institution, creates a "charitable institution," and it is not liable for the negligent acts of its officers or employees in preserving its grounds.

CHARITIES—LIABILITY OF OFFICERS AND EMPLOYEES.

3. An action against an officer of a charitable institution for damages for his negligence must be against him individually, and not in his corporate capacity, for a recovery may not be discharged from the trust funds of the institution.

CHARITIES—LIABILITY OF OFFICERS AND EMPLOYEES.

4. A complaint in an action against a charitable institution and an officer, which alleges that the officer is a member of the board of trustees of the institution, and, as such, has charge of its buildings and grounds, that the institution and the officer, acting in concert, set on the grounds of the institution a gopher gun causing the injuries complained of, and which prays for judgment against defendants, and each of them, states a cause of action against the defendants individually as joint tort-feasors, and supports a judgment against the officer individually.

CORPORATIONS—OFFICERS—LIABILITY FOR TORTS.

5. While a corporation may be liable for the torts of its officers when committed in the regular course of their employment, the officers are also liable individually, regardless of whether the corporation is liable.

CHARITIES—TORTS—DANGEROUS PREMISES—EVIDENCE.

6. In an action against an officer of a charitable institution for injuries caused by a gopher gun set on the grounds of the institution pursuant to his order, evidence *held* to justify submission to the jury of the issue of negligence of the officer.

TRIAL—WEIGHT OF EVIDENCE—QUESTIONS FOR COURT.

7. The court, in viewing evidence in a civil case to determine a motion for a directed verdict, may not disregard well-authenticated facts which the judges know as men.

EVIDENCE—JUDICIAL NOTICE—FACTS OF COMMON KNOWLEDGE.

8. Courts will take judicial notice of the habits and instincts of domestic animals.

NEGLIGENCE—CARE OF PREMISES.

9. A person in possession of land, who commits or omits any act thereon which endangers those who have a license to pass over the premises, is liable for any resulting injury.

From Washington: JAMES U. CAMPBELL, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by John F. Hill against the president and trustees of the Tualatin Academy and Pacific University, a corporation, hereinafter called the "University," W. N. Ferrin, and C. S. Kelsey, to recover damages for a personal injury. The averments of the complaint, as far as deemed material herein, are, in effect, that Ferrin is a member of the board of trustees of the University, "and as such has charge of the buildings and grounds of the defendant president and trustees of Tualatin Academy and Pacific University, acting for said corporation"; that Kelsey is employed by the University as janitor, caring for its buildings and grounds, including the campus, describing the entire premises, in performing which duty he was "acting under and pursuant to the instructions of the defendant corporation and the defendant W. N. Ferrin"; that plaintiff is a minor four years old and his father, M. F. Hill, is his guardian *ad litem;* that prior to November 13, 1909, the defendants, the University, Ferrin, and Kelsey, acting in concert, set on the campus at or near an archery course managed by the Maurice Thompson Archery Club a loaded gopher gun in such a careless and negligent manner as to endanger the life and limbs of any person who by invitation, license, or otherwise went upon the course, and the defendants thereafter allowed the gun to remain where it was so placed without covering the instrument or putting up any notice of the danger; that on November 13, 1909, the plaintiff in company with his mother, at the invitation of the defendants, the University, Ferrin, and Kelsey, communicated by the archery club

through its president, F. S. Barnes, were upon the campus, and while so lawfully there the gun was discharged, tearing off the index and part of the second finger of plaintiff's left hand, to his damage in the sum of $10,000.

The answer denied the material averments of the complaint, and for a separate defense alleged *inter alia,* that the defendant the University at all times stated is and was a charitable corporation organized by an act of the legislative assembly of the territory of Oregon January 13, 1854, and acts amendatory thereof, filed in the office of the Secretary of State February 20, 1893, and February 23, 1907; that its entire property is held in trust for charitable purposes and the expense of maintaining the benefaction is now and at all times has been paid by donations, tuitions, and the income of trust funds.

The reply denied the allegations of new matter in the answer, and, the cause coming on for trial, the plaintiff introduced his evidence and rested, whereupon a verdict was directed for the defendants, except Kelsey, as to whom a voluntary nonsuit was taken, and judgment having been rendered in accordance therewith, the plaintiff appeals.                                        REVERSED.

For appellants there was a brief over the names of *Mr. W. O. Sims* and *Messrs. Bagley & Hare,* with an oral argument by *Mr. Sims* and *Mr. George R. Bagley.*

For respondents there was a brief over the names of *Mr. Milton W. Smith, Mr. Bela S. Huntington* and *Mr. Edmund B. Tongue,* with an oral argument by *Mr. Smith and Mr. Tongue.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is contended that the testimony given tended to prove that each of the defendants was a joint tort-feasor, and hence the court erred in directing the verdict that was returned. It is maintained by defendants' counsel, how-

ever, that the University holds all its property in trust for charitable purposes, and no recovery could be had against it for alleged negligence of any of its officers or employes, and that the defendant Ferrin is not sued in his individual capacity, but as a representative of the University, and for these reasons no error was committed as asserted.

The testimony shows that the University owns, at Forest Grove, college and other buildings devoted to the advancement of higher education, and surrounding these structures it also owns grounds which are used by the students for field sports and recreation. Its campus is fenced only on one side and in part on each end, and people who are not students are permitted to visit the grounds at all times. Extending diagonally across the southeast corner of the campus, and separated from the main part thereof by a line of railway, the Maurice Thompson Archery Club has been permitted by the University to occupy a narrow strip of ground as an archery course, to which Barnes, the president of the club, with the knowledge and tacit consent of the University, has invited persons who were not members of the club to practice and witness archery. In the fall of 1909, the campus was invaded by gophers, and, in order to destroy them, small loaded guns were placed at the entrances of the tunnels made by these burrowing rodents. The guns referred to have a barrel 4 inches long set in an iron frame, the entire length of the instrument being about 12 inches. A small iron rod, on the point of which is placed a wooden block, projects forward beyond the muzzle, so that a gopher pressing lightly against the piece of wood trips the trigger, with which the iron rod is connected, thereby releasing a strong steel spiral spring surrounding an iron needle, which, forcing the point of the latter against a fulminating cap of a shotgun cartridge ignites the gunpowder, and discharges the lead

Sig. 7

shot which the shell contains.  The defendant Kelsey in the year 1909 was employed by the University as janitor, whose duty it was to care for the buildings and grounds. He set on the campus several of these guns, and also placed a loaded one at the entrance of a gopher hole near the archery course, the iron breech of the instrument being uncovered and visible.  No notice or other warning was put up of the dangerous character of the gun.  The plaintiff's mother and her sister accepted Barnes' invitation to visit the course and practice archery, and on November 13, 1909, they took with them to that place the plaintiff, who was then four years old.  He was placed on a bench about midway of the course between two targets, while his mother shot arrows from a bow at these marks.  While thus occupied, she heard a detonation, and, looking in the direction from which the explosion emanated, she discovered that her son had been injured by a discharge of the gopher gun, which had been placed in the hole near the course.

There were identified and offered in evidence the records of the board of trustees of the University that had been kept since 1848, the by-laws adopted after the passage of the act of incorporation January 13, 1854, rule 12 of which defines the duties of the officers of the corporation, and the record of the meetings of the board held August 9, 1900, and June 18, 1903, showing the election of W. N. Ferrin to the office of president of the University, whereby he became *ex officio* one of its trustees.  Leave was granted to withdraw these records, and to substitute in lieu thereof certified copies of certain pages therefrom, but neither the books nor such copies have been sent up.

1. The public and private acts of the legislative department of this State will be assumed to be known to the court.  Section 729, subd. 3, L. O. L.  Evidence, therefore, of the incorporation of the University, was not essential to the proper consideration of this cause on appeal.  *Dolph*

v. *Barney*, 5 Or. 191; *ex parte Wygant,* 39 Or. 429 (64 Pac. 867: 54 L. R. A. 636: 87 Am. St. Rep. 673) ; *State ex rel.* v. *Banfield,* 43 Or. 287 (72 Pac. 1093) ; *Naylor* v. *McColloch,* 54 Or. 305 (103 Pac. 68).

2. The act incorporating the University, passed January 13, 1854 (Special Laws passed by the legislative assembly of the territory of Oregon at the fifth regular session thereof, p. 30) "established in Washington County, an institution of learning, for the instruction of persons of both sexes, in science and literature, to be called the 'Tualatin Academy and Pacific University.' " Certain persons were named a body politic and corporate as "the President and Trustees of Tualatin Academy and Pacific University," and they and their successors were authorized to act for it. The act further provided "that the capital stock of said institution shall never exceed five hundred thousand dollars, nor the income or proceeds of the same be appropriated to any other use than for the benefit of said institution as contemplated by this act." Section 8. Amendments were made February 20, 1893 (Special Laws Or. 1893, p. 766), and February 23, 1907 (Gen. Laws Or. 1907, p. 155), to the act of incorporation, but no important changes were effected thereby. The act referred to manifests a legislative intention to incorporate a charitable institution. In *Feoffees of Heriot's Hospital* v. *Ross,* 12 Cl. & F. *507, a fund having been created by bequest for the education of fatherless boys who were freemens' sons of Edinburgh, Ross, who was qualified, applied for admission to the benefits of the charity, but, his application having been denied, he instituted an action against the trustees to recover the damages which he claimed to have sustained. The cause finally reached the House of Lords, where it was determined that, if the charity trustees were guilty of a breach of trust, the person injured by such violation of duty had no right to be indemnified by damages out of the trust fund.

A college, by reason of its eleemosynary nature and its relation to its students, is not liable for a personal injury to a pupil caused by negligence of the superintendent of the institution in clearing land owned by it preliminary to erecting thereon a heating plant for college purposes. *Currier* v. *Trustees of Dartmouth College* (C. C.) 105 Fed. 886: 117 Fed. 44 (54 C. C. A. 430). The trustees of an unincorporated home, maintained for the free education and maintenance of deserving and indigent boys, is a valid public charity, and, if the home has used reasonable care in selecting its servants, it is not liable for injuries caused by the negligence of its employes. *Farrigan* v. *Pevear,* 193 Mass. 147 (78 N. E. 855: 7 L. R. A. (N. S.) 481: 118 Am. St. Rep. 484). To the same effect, as to an injury resulting to a pupil while attending a public school, who was hurt by falling over an unsafe staircase, see *Hill* v. *City of Boston,* 122 Mass. 344 (23 Am. Rep. 332). See, also, *Freel* v. *School City of Crawfordsville,* 142 Ind. 27 (41 N. E. 312: 37 L. R. A. 301). Corporations organized solely for educational purposes to which all their revenues must be applied are charitable institutions, and, as such, are not liable for the negligent acts of their servants, notwithstanding tuition fees are received for technical knowledge imparted to their students. 6 Cyc. 974; 1 Sherman & Redfield, Neg. (5 ed.) § 331; *Parks* v. *Northwestern University,* 218 Ill. 381 (75 N. E. 991: 2 L. R. A. (N. S.) 556: 4 Ann. Cas. 103). By reason of the *quasi* public service performed by a college in the dissemination of universal knowledge, whereby the happiness and welfare of students are advanced and society is thereby benefited, such institution of higher education is analogous to a private hospital maintained for the care and accommodation of persons who are in need of nursing and medical attendance or who require a surgical operation, the rendering of which in case of sickness tends to the restoration of health, and the per-

formance of which in the case of accident, wounds, neoplasm, necrosis, etc., conduces to the prolongation of life. 6 Cyc. 974. The rule is well settled that if a patient enters a hospital for treatment, and is injured through malpractice, lack of skill, or unprofessional conduct of any of the medical staff or attendants, or if he is hurt by reason of the negligence, tort, act, or omission of any such person, he may maintain an action against the party directly causing the harm. 15 Am. & Eng. Enc. Law (2 ed.) 762. When, however, in the selection of an officer or servant, due care has been exercised by a private hospital, it is generally held not to be liable for his subsequent act, performed in pursuance or disregarded in defiance of his appointment, unless prior to such occurrence, the charitable institution had knowledge of his unfitness or incapacity. 21 Cyc. 1111; *Henslin* v. *Wheaton*, 91 Minn. 219 (97 N. W. 882: 64 L. R. A. 126: 103 Am. St. Rep. 504: 1 Ann. Cas. 19) ; *Stanley* v. *Schumpert*, 117 La. 255 (41 South 565: 6 L. R. A. (N. S.) 306: 116 Am. St. Rep. 202: 8 Ann. Cas. 1044) ; *Union Pacific R. Co.* v. *Artist*, 60 Fed. 365 (9 C. C. A. 14: 23 L. R. A. 581) ; *Eighmy* v. *Union Pacific R. Co.*, 93 Iowa, 538 (61 N. W. 1056: 27 L. R. A. 296) ; *Powers* v. *Massachusetts Homeopathic Hospital,* 109 Fed. 294 (47 C. C. A. 122: 65 L. R. A. 372).

The legal principle is not universal, however, that a hospital maintained by a master for the benefit of its servants who are required regularly to contribute to a fund to be used in part payment for the services of physicians and surgeons who care for such employes in case of their sickness or accident is not a charitable institution so as to exempt it from liability for negligence in the care or treatments of its patients. *Jackson* v. *Pacific Coast Condensed Milk Co.*, 61 Or. 158 (120 Pac. 1) ; *Phillips* v. *St. Louis, etc., R. Co.*, 211 Mo. 419 (111 S. W. 109: 17 L. R. A. (N. S.) 1167: 124 Am. St. Rep. 786: 14 Ann.

Cas. 742). Consonant with the rule thus adopted in Oregon, plaintiff's counsel cite cases from the courts of last resort in other states where actions were sustained against, and damages recovered from, private hospitals for injuries suffered by reason of the incompetence, negligence, or misconduct of their agents, servants, or employes. In each of the cases, however, to which attention has been attracted, the tort complained of occurred in the regular course of the business in which such eleemosynary institutions were severally engaged. Though the preservation of its grounds may have been desirable, the University was not incorporated to undertake landscape gardening, and the killing of gophers by its agents and employes being outside the scope of its employment the decisions referred to are inapplicable. In the case at bar it is evident upon principle and authority that, since the University holds all its property in trust for charitable purposes, it is not liable for the alleged negligent acts of its officers or employes, under the circumstances detailed, and that in directing a verdict in its favor no error was committed. The answer alleged, in addition to the defenses hereinbefore adverted to, that at the time plaintiff was injured he was a trespasser on the campus; that he was then of sufficient age fully to realize the dangerous character of the gopher gun; and that the negligence of his mother in taking him to the archery course where he was hurt should be imputed to him, thereby preventing a recovery, and hence no error was committed in directing the verdict. The testimony introduced was sufficient to authorize a submission of the cause to the jury for their determination as to whether or not the University had permitted a use of a part of the premises by the archery club pursuant to which license the plaintiff and his mother were by invitation lawfully upon the campus at the time he was injured. The trial court evidently entertained the belief that the testimony

was adequate for that purpose when the cause was allowed to proceed against Kelsey, thus apparently assuming that, as to him, a recovery might be had. *Currier* v. *Trustees of Dartmouth College* (C. C.) 105 Fed. 886.

As to the mental capacity of the plaintiff by reason of his tender years, and as to the alleged carelessness of his mother which it is asserted should be imputed to him in consequence of being in a place of unknown danger, these questions have heretofore been settled by this court, and require no further elucidation. *Macdonald* v. *O'Reilly,* 45 Or. 589 (78 Pac. 753).

3. Though an action may be maintained against an officer, servant, or employe of a charitable institution to recover damages for an injury caused by the act or omission of such person, the action must be against him in his individual, and not in his corporate, capacity, so that, if a recovery is awarded, it will not be discharged from the trust funds. *Feoffees of Heriot's Hospital* v. *Ross,* 12 Cl. & F. *507, *513.

4. It will be remembered that the complaint alleges that the defendant Ferrin is a member of the board of trustees of the University, and as such has charge of its buildings and grounds. In another paragraph of plaintiff's primary pleading it is averred that the University, Ferrin, and Kelsey, acting in concert, set or caused to be set on the campus a gopher gun, etc. The prayer of the complaint is for "judgment against the defendants and each of them" for the sum of $10,000. The demand of the relief which the plaintiff claims, though not controlling, may be examined with a view of illustrating and determining the nature of his action. In the light of this rule, it is believed that a fair construction of the complaint induces the conclusion that the action is against the defendants individually as joint tort-feasors.

5. A corporation is liable for the torts of its officers when committed in the regular course of their employment. 21 Am. & Eng. Enc. Law (2 ed.) 913. When such agents, acting for their principals, commit torts upon third persons they are liable therefor, regardless of whether or not the corporation is amendable. 21 Am. & Eng. Enc. Law (2 ed.) 880; *Cameron* v. *Kenyon-Connell Commercial Co.*, 22 Mont. 312 (56 Pac. 358: 44 L. R. A. 508: 74 Am. St. Rep. 602, and notes).

6. From a careful examination of the entire testimony given at the trial, we think the cause should have been submitted to the jury for a determination as to whether or not Ferrin's direction to set gopher guns on the campus was such an act as to authorize a recovery against him of the damages inflicted by the injury. The instrument causing the hurt was properly identified and has been sent up with the bill of exceptions. An examination of the mechanism of the gun will convince the most skeptical of the danger of handling it when loaded, for the slightest touch of the end of the projecting rod immediately releases the trigger, when the needle is pulled back to the notch designed as a place of rest for it, preparatory to discharging a loaded cartridge.

7. Judges in viewing evidence in civil cases, in order to determine a motion for a directed verdict, ought not to disregard well-authenticated facts which they know as men. It is often reported in Oregon that death and injury have resulted from the accidental discharge of gopher guns by persons who have set or removed them.

8. Courts will take judicial notice of the habits and instincts of domestic animals, because the impulses and peculiarities of nature of these creatures are supposed to be generally known. In the absence of any evidence on the subject, the characteristics of the gopher will probably not be judicially recognized, but, if that notice were taken, no doubt would be entertained that, when

the entrance to such rodent's tunnels was opened up, the animal would attempt with earth to fill the aperture and thus exclude the light.  Taking advantage of this instinct of protection, human strategem has enlarged the opening, or removed the soil therefrom, admitting the light, setting a gopher gun at the entrance of the tunnels, so that, unless the instrument remains uncovered and luminous rays are diffused at the ingress of the subterranean passage, the gun would be wholly inefficient for the purpose for which it was designed.  The loaded instrument when thus set would therefore  seem  to  be  inherently dangerous, or at least so hazardous as to require the cause to be submitted to the jury on this branch of the case.

9.  A person's dominion over real property of which he has the legal possession is not absolute, but restricted to the extent that his use of the premises must be reasonable, and such as is not directly calculated to produce injury to others.  1 Wood, Nuis. (3 ed.) § 133; *Barnes* v. *Hathorn,* 54 Me. 124.  If a person having possession of land commit or omit any act thereon which endangers or annoys those that have a license to be upon or to pass over the premises, such act is in the nature of a nuisance, and its author will be liable for any resulting injury. 21 Am. & Eng. Enc. Law (2 ed.) 701: 29 Cyc. 1181; *State* v. *Moore,* 31 Conn. 479 (83 Am. Dec. 159) ; *Scheuerman* v. *Scharfenberg,* 163 Ala. 337 (50 South. 335: 24 L. R. A. [N. S.] 369: 136 Am. St. Rep. 74: 19 Ann. Cas. 937, and notes).

A textwriter, distinguishing between the exercise of a purpose which necessarily is or may possibly become a wrong from the use by a person of his property, says:

"There is a wide distinction between acts lawful in themselves done by one upon his own premises, which may result in injury to another if not properly done or guarded, and those which in the nature of things must so

result. In the former case a party could only be made liable for actual negligence in the performance of the act or mode of maintaining it, while in the latter case he would be liable for all the consequences of his acts, whether guilty of negligence or not. The one act only becomes a nuisance by reason of the negligent manner in which it is performed or maintained, while the other is a nuisance *per se.*"

1 Wood, Nuis. (3 ed.) § 127. As illustrating this principle, see the case of *Cahill* v. *Eastman,* 18 Minn. 324 (Gil. 292) (10 Am. Rep. 184). The setting of gopher guns on the college grounds, which the public have been permitted freely to visit, is so nearly a nuisance *per se* as to require the cause to be submitted to the jury after production of testimony as to the construction of the gun and the ordinary manner of setting it.

The defendant Kelsey as plaintiff's witness was asked, in referring to the instrument causing the injury:

"At whose direction did you set this particular gun?"

He replied:

"I placed all the guns I set on the campus under the orders of Prof. Ferrin, and was also asked to place them on the archery course by Mr. Barnes."

On cross-examination, in alluding to the gun in question, the witness was asked:

"Who directed you to set it on the archery course?"

He answered:

"Prof. Ferrin directed me to set them anywhere on the campus, and Mr. Barnes asked me to set it on the archery course."

It will be remembered that the campus is not fenced on one side, is open in part at each end, and the public have free access to the premises. The archery club has also been permitted to occupy a part of the grounds to which persons have been invited to witness and practice archery. The defendant Ferrin having ordered these guns to be set

on the campus, we believe that an error was committed in directing a verdict to be returned in his favor.

The judgment is therefore reversed, and the cause remanded, with directions to take such further proceedings as may be necessary not inconsistent with this opinion.

Mr. Justice MCBRIDE dissents as to the conclusion reached with respect to the defendant W. N. Ferrin.

REVERSED.