Anna SCHOEN, Plaintiff-Appellant,

v.

Reverend Paschal KERNER and Reverend Terrance Rhoades, Defendants-Respondents.

No. KCD 27841.

Missouri Court of Appeals, Kansas City District.

Nov. 1, 1976.

Motion for Rehearing and/or Transfer Denied Nov. 29, 1976.

Application to Transfer Denied Jan. 10, 1977.

John J. McFadden, Sr., John J. McFadden, Jr., Kansas City, for plaintiff-appellant.

Clyde G. Meise, P. Thomas Loughlin of Meise, Cope & Jarrard, Kansas City, for defendants-respondents.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This case reaches this court upon an agreed statement of all proceedings in the lower court which led to the entry of a summary judgment in favor of defendants. A single question of law is presented—at the time in question (April 23, 1967) did the charitable immunity doctrine insulate individuals whose alleged negligence purportedly caused injuries and damages claimed to have been sustained by plaintiff.

Anna Schoen, plaintiff, filed a petition in the Circuit Court of Jackson County, Missouri, alleging that: defendant Reverend Paschall Kerner was the pastor and defendant Reverend Terrance Rhoades was the assistant pastor of Our Lady of Sorrows Catholic Church; in such capacity they were charged with the care, custody, operation, maintenance and control of the buildings of the church, including the rectory thereof; on April 23, 1967, a parish open house was held in the rectory, to which she was invited, attended and agreed to serve refreshments and to wait upon the other guests; upon going to the rear entry to the rectory to admit two guests she fell down an open, unlighted stairway into the basement; the defendants "were negligent in that in the exercise of ordinary care and prudence they knew or reasonably could have known that there was a dangerous condition created by the open, unlighted basement stairway located at the rear entrance, in time to have warned the plaintiff of the aforesaid dangerous condition, or in time to have barricaded said stairway, yet they negligently failed to warn plaintiff of said danger or to barricade said stairway"; as a direct and proximate result of the aforesaid negligence plaintiff sustained various injuries and damages.

The defendants answered denying every allegation of the petition, asserted that plaintiff was contributorily negligent, and further alleged that plaintiff's petition failed to state a cause of action against them because on the date of the alleged injury the defendants were the agents and servants of the Catholic Diocese of Kansas City-St. Joseph, and of the Our Lady of Sorrows Catholic Church, both of which were charitable institutions, and that they were entitled to the protection of the charitable immunity doctrine.

Following the filing of the answer, defendants filed a motion for summary judgment alleging that they were agents and servants of the Catholic Diocese of Kansas City-St. Joseph and the Our Lady of Sorrows Catholic Church, acting within the course and scope of their agency at the time and place of plaintiff's claimed injury, that the Diocese and church were benevolent and religious non-profit organizations and charitable institutions and that the defendants were therefore immune from liability for the negligence alleged in plaintiff's petition. The motion further alleged that there was no genuine issue as to any material fact on the issue of whether the defendants were the agents of the Catholic Diocese of Kansas City-St. Joseph and the Our Lady of Sorrows Catholic Church, acting within the course and scope of their agency, or as to whether the Diocese and church were charitable institutions.

The motion for summary judgment was sustained on the ground that the doctrine of charitable immunity was applicable. The trial court held: (1) that Our Lady of Sorrows Catholic Church was a benevolent and religious not-for-profit organization and a charitable institution within the meaning of the law of the State of Missouri; and (2) that the opinion of the Missouri Supreme Court in *Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599 (Mo.banc 1969), which abolished the doctrine of charitable immunity, specifically held that the decision was not retroactive, but applicable only to causes of action arising after November 10, 1969, and

that this cause of action arose April 23, 1967. This appeal followed.

Rule 74.04(c) provides in pertinent part that a summary judgment when sought shall be rendered forthwith "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact *and that any party is entitled to a judgment as a matter of law*." (Emphasis added.) An absolute defense to a plaintiff's cause of action may be made by way of a motion for summary judgment [see: *State ex rel. Sisters of St. Mary v. Campbell*, 511 S.W.2d 141 (Mo.App.1974); and *McQueen v. Humphrey*, 421 S.W.2d 1 (Mo.1967)], but before the trial court may enter summary judgment it must be shown unassailably as a matter of law that the movant is entitled to judgment and any doubt in this regard must be resolved against the movant. *Cure v. City of Jefferson*, 380 S.W.2d 305 (Mo.1964); *Moore-Harris Abstract Company v. Estes*, 495 S.W.2d 485 (Mo.App.1973); and *Hurwitz v. Kohm*, 516 S.W.2d 33 (Mo.App.1974).

In the instant case the trial judge was obviously convinced that the defense of charitable immunity was available to the defendants, priests of a religious society, and, being so convinced, granted the summary judgment prayed. In so doing, the trial court erred. The doctrine of charitable immunity did not extend so far as to cloak the individual tort-feasors with immunity but served only to insulate the charitable institution itself from liability.

Although no Missouri case to date appears to have directly addressed the issue, and only a limited number of other jurisdictions, at best, appear to have done so, definite authority exists that application of the doctrine of charitable immunity is not as broad as defendants obviously led the trial court to believe. At least two cases from other jurisdictions directly hold that the doctrine is not so broad and several Missouri cases strongly hint that the same result prevails in this state.

In *Wood v. Abell*, 268 Md. 214, 300 A.2d 665 (1973), defendants below were one Glen L. Wood and the St. Mary's County Fair Association, Inc. Wood had been vice president and general manager of the Association and had received authority from the Association's Board of Directors to hire some laborers to assist in readying the Association's fairgrounds for a forthcoming annual event. Wood hired Francis and Donal Abell. On July 31, 1970, Wood, who sometimes volunteered his services and equipment, was working with the Abells in preparing the fairgrounds. He was driving a tractor with an augur attachment and was digging postholes. While digging the first hole the auger went down a short distance and then stopped having struck an obstruction. Wood shouted to the Abells to push down on the auger and when they did so without avail Wood dismounted the tractor to assist them. As he did so, the tractor started backwards and ran over Francis who sustained injuries from which he later died. The trial court made a pretrial determination that the Association was entitled to assert the defense of charitable immunity "to the extent it is not covered by liability insurance". Wood amended his original plea so as to claim the defense of charitable immunity. The trial court extended to Wood its "earlier determination of the Association's charitable immunity" and this extension was challenged on appeal. The Maryland Court of Appeals noted 300 A.2d at 678: "Suffice it to say, the question whether immunity should be extended to cover the negligent employee of a charitable institution seems never to have been decided by this Court, and, ironically, there is a paucity of authority elsewhere, even though cases on the basic subject abound." The court went on to note that charitable immunity was alive and well in Maryland and was bottomed on the "trust fund" theory. The "trust fund" theory was explained as follows 300 A.2d at 678: "There is a trust, and there are persons intended to manage it for the benefit of those who are to be the objects of the charity. To give damages out of a trust fund would not be to apply it to those objects whom the author of the fund had in view, but would be

to divert it to a completely different purpose." The court pointed out that the Maryland courts had consistently upheld the charitable immunity doctrine on the "trust fund" theory and in no case had the "trust fund" theory been applied to immunize the negligent employee. The court, 300 A.2d at 679, concluded: "In sum, when we bear in mind the historical background of the charitable immunity doctrine as applied in this state, there is no sound reason for extending the cloak to a negligent employee. Recovery against him can in no way do violence to the 'trust fund' theory, upon which the doctrine is predicated. Nothing has been presented here to support a conclusion that recovery against Wood would lead to an invasion of trust funds held by the Association, if there are any. Thus, the trial judge erred in ruling that the defense of charitable immunity was also available to Wood."

In *Hill v. President & Trustees of Tualatin A. & P. U.*, 61 Or. 190, 121 P. 901 (1912), one John F. Hill, a minor, had been injured when a loaded gopher gun exploded when he was on the grounds of the Tualatin Academy and Pacific University. The gopher gun had been placed on the grounds of the University to repel an invasion of gophers. Suit for injuries and damages incurred was brought against the president and trustees of the Tualatin Academy and Pacific University (the University), W. N. Ferrin, a member of the board of trustees of the University in charge of the buildings and grounds, and C. S. Kelsey, a janitor employed for caring for the University's buildings and grounds. The testimony showed that Kelsey had set out several of the guns at the direction of Ferrin. No notice or other warning was put up as to the dangerous character of the guns. The Oregon Supreme Court held that the University held all its property in trust for charitable purposes and was not liable for the alleged negligent acts of its officers or employees. It further held that an action may be maintained against an officer, servant, or employee of a charitable institution to recover damages for an injury caused by the act or omission of such person, when the action is against him as an individual and not in his corporate capacity. The court reasoned that such an action could be maintained because any recovery awarded would not be discharged from any property held in trust for the benefit of the charitable institution. The court construed the petition to be an action against the defendants individually as joint tort-feasors and held that it was error to direct a verdict for Ferrin under whose direction the guns were set out.[1]

The rationale of both the *Wood* and *Hill* cases is that the charitable immunity doctrine is based on a "trust fund" theory and no violence is done to the theory by allowing recovery against an individual tort-feasor because permitting recovery from one would not invade the trust fund. In Missouri, prior to *Abernathy v. Sister of St. Mary's*, supra, the immunity of charitable institutions from tort liability was based on both a "trust fund" theory and a public policy theory.[2] *Dille v. St. Luke's Hospital*, 355 Mo. 436, 196 S.W.2d 615 (1946); *Stedem v. Jewish Memorial Hospital Assn.*, 239 Mo. App. 38, 187 S.W.2d 469 (1945). These two theories were equated in *Abernathy v. Sisters of St. Mary's*, supra, at 604, the court pointing out that "[t]he 'trust fund' theory embraces all that is involved in the doctrine of immunity as public policy." Cf. *Eads v. Young Women's Christian Ass'n*, 325 Mo. 577, 29 S.W.2d 701 (1930). Since the charitable immunity doctrine in Missouri, when viable, was based upon the same theory as

1. A voluntary non-suit had been taken as to Kelsey.

2. The public policy theory was summarized in *Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599, 600 (Mo.banc 1969): "In other words, the court said [*Adams v. University Hospital*, 122 Mo.App. 675, 99 S.W. 453 (1907)], in effect, that it is better that the individual suffer injury without compensation from the negligent charitable institution than to risk the judicially assumed probability that the public and state would be deprived of the benefits of charity; that the interest of the latter is so supreme that the former must be sacrificed to it."

was the doctrine in Maryland and Oregon, the rationale of the *Wood* and *Hill* cases bears directly on the question under discussion.

No Missouri cases have been found which, during the reign of the charitable immunity doctrine, extended its protective mantle to individual tort-feasors. This silence of case authority undoubtedly reposed in a generally accepted belief that the underlying "trust fund" theory supporting the doctrine would not have been violated by refusing to extend the immunity afforded by the doctrine to individual tort-feasors.

Hints to this effect emerge in several cases decided in this state. In *Roberts v. Kirksville College of Osteopathy & Surgery*, 16 S.W.2d 625 (Mo.App.1929), a patient sued a charitable association after sustaining injuries when an employee of the association applied a hot water bottle to her feet while she was under the influence of an anesthetic. This court held that a demurrer to the evidence was properly sustained saying at 626: "*The agents of the charity who do the negligent acts which result in a plaintiff's injury are liable therefor*; but the doctrine of respondeat superior does not apply to defendant, because it is a charity and holds all its funds in trust to carry out the benevolent purposes for which it was chartered by the state." (Emphasis added.) And see *Weigel v. Reintjes*, 154 S.W.2d 412 (Mo.App. 1941), *rev'd on other grounds*, where a woman recovered damages from the pastor of a church for injuries she sustained when she was caused to fall by a depression upon the entranceway to the church. Her cause of action was premised upon negligence. Although the court was not faced with the question of whether the pastor was immune from liability under the charitable immunity doctrine, the court did hold that "[p]laintiff was an invitee upon the premises of defendant, and while defendant was not an insurer of her safety, he nevertheless owed her the duty to exercise ordinary care to keep the used parts of the premises and the entrances thereto in a reasonably safe condition for her use and the use of persons accepting the invitation to attend the church." *Id.* at 416.

In *Kreuger v. Schmiechen*, 364 Mo. 568, 264 S.W.2d 311 (1954) the plaintiff brought suit against the pastor and directors of a church in their representative capacity as members of the "Consistory". Plaintiff claimed he suffered damages when he fell upon the premises of the church and that he was caused to fall "by negligence of the defendants, *through their agents and servants*, in operating, managing and controlling the said Church." The Missouri Supreme Court ruled the dismissal of plaintiff's petition proper holding that the charitable immunity doctrine extended to the members comprising the "Consistory". In addressing plaintiff's claim that Art. I, Sec. 14, of the Missouri Constitution mandated that the courts "are to be open to every person and certain remedy afforded for every injury", the court said "[w]e deem it sufficient to say that the courts are open to plaintiff to sue the tort-feasor who is alleged to have caused his injury." *Id.* at 314.

■ Defendants were not entitled to judgment as a matter of law since the then prevailing doctrine of charitable immunity was not so broad as to constitute a protective umbrella over them as individuals. Not being entitled to judgment as a matter of law, the granting of the motion for summary judgment was error because genuine issues of fact remained to be resolved.

Judgment reversed and cause remanded.

All concur.