Argued June 6, affirmed July 2, rehearing denied September 10, 1918.

O'NEILL v. ODD FELLOWS HOME.*

(174 Pac. 148.)

**Statutes—Construction—General and Special Words.**

1. Where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned, unless the legislative intent clearly appears to the contrary.

**Master and Servant—Workmen's Compensation Act—Construction.**

2. Employers' Liability Act (Laws 1911, p. 16), requiring the use of all precautions for safety of employees by persons in construction

---

*On construction and effect of Workmen's Compensation Acts, generally, see comprehensive notes in L. R. A. 1916A, 23, and L. R. A. 1917D, 80.    REPORTER.

or repair of any structure, or operation of machinery, or manufacture or transmission of electricity or the use of any dangerous appliance or substance, or machinery or shafts, wells, floor openings and requiring all owners, contractors and other persons having charge of or responsible for any work involving a risk or danger to the employees, or the public to use every device, care and precaution which is practicable, did not render the employer liable when he furnished a stepladder two or three feet high, not equipped with a hand-rail, or with other safeguards for use by a laundress hanging up washing, since the act applies only to employments beset with danger.

[As to occupations and employments within the purview of the Workmen's Compensation Act, see note in Ann. Cas. 1917D, 4.]

Charities—Charitable Institutions—Torts—Liability of Officers.

3. An action may be maintained against an officer of a charitable institution to recover damages for an injury caused by the negligence of such person, but the action must be against him in his individual and not in his corporate capacity, so that if a recovery is awarded it will not be discharged from the trust funds.

Charities—Liability—Torts.

4. Odd Fellows Home of Oregon, organized under Section 6796, L. O. L., providing that no such corporation shall ever use any of its resources for any other than charitable objects, cannot be held liable for injuries to a laundress working at the institution.

From Multnomah: GEORGE R. BAGLEY, Judge.

Department 2.

The complaint alleges in substance that the defendant is a corporation organized under the laws of the State of Oregon, and operating an establishment at East 2d and Holgate Streets, Portland, Oregon, as a home for members of the Independent Order of Odd Fellows.

"That on and prior to the 9th day of November, 1914, the plaintiff was employed as a laundress in said home or establishment maintained by defendant and known as the Odd Fellows Home of Oregon; that as a part of her duties, she was directed and required to hang washing upon lines fastened upon the porch of said home; that said lines were carelessly, recklessly and negligently stretched over a cement floor, the surface of which was hard, rough and irregular; that said lines were carelessly, recklessly and negligently placed by the defendant at such a high and unreasonable dis-

tance from the floor that it was necessary, in order to hang the washing upon said lines, to stand upon some portable object; that in order to enable the plaintiff to hang washing upon said lines, this defendant, by its Superintendent, on or about said 9th day of November, 1914, carelessly, recklessly and negligently directed this plaintiff to use a small portable wooden stepladder; that while plaintiff was descending said stepladder in the discharge of her duties, her skirt caught upon the top thereof, and on account of the dangerous and defective condition of said stepladder as hereinafter set out, became fastened thereon, and caused said ladder on account of its dangerous and defective condition as hereinafter set out, to move or shift by reason of which plaintiff was caused to and did fall from said ladder to the cement floor with great force and violence, and by reason thereof sustained injuries.

"That the stepladder furnished the plaintiff was a defective, dangerous and unsafe contrivance to be used for the purpose for which plaintiff was directed to and did use the same, in this: That said stepladder was light, narrow and unstable, without sufficient base, the effect of which was that it might and did shift and tip easily; that said stepladder was steep and declivitous and was not equipped with a handrail or other appliance whereby plaintiff might steady herself when using and standing upon the same; that the surface of the material composing said ladder was rough and unequal; that the edges thereof were rough, jagged and projecting, that said stepladder had no rubber nubs, weights or other safety devices upon the base or feet thereof to keep the same from shifting or slipping upon said concrete floor; that said stepladder was attached to no portable platform for a base thereof; that the surfaces of the material composing said ladder might and could have been made smooth and equal; that the rough, jagged and projecting edges of said ladder might and could have been removed therefrom; that a handrail or other appliance wherewith plaintiff might steady herself in using said step-

ladder, rubber nubs and movable platform thereto attached could have been constructed and maintained in connection therewith for plaintiff's use and protection; that defendant might and could have provided plaintiff with a movable platform resting upon an even, solid base, wherewith to reach the lines; that the said lines might and could have been lowered; that any and all of the foregoing precautions might and could have been taken by the defendant to protect and safeguard the life and limb of this plaintiff without interfering with the use of such ladder, platform or other device so to be used in the hanging of said washing, and without interfering with or depreciating the effect of the work in which plaintiff was engaged.    That the work in which plaintiff was engaged involved a risk or danger to the plaintiff.''

And alleges her damages in the sum of ten thousand ($10,000) dollars, and twenty-five ($25) dollars, doctor bills.

The defendant answered denying any negligence, and for a first, further and separate answer averred, that at the time of the injury, plaintiff selected from a number of stepladders at said home, a stepladder about two or three feet in height, consisting of two steps and a top, and constructed in a substantial manner; that plaintiff was wearing a narrow skirt, commonly called a hobble skirt, so that it hindered the plaintiff from stepping up or down; that after plaintiff had safely hung all of said clothes upon the line and while attempting to descend from the stepladder, the narrowness and tightness of the skirt hobbled and hampered the plaintiff in the use of her limbs in descending the ladder, and she was thereby caused to fall from the stepladder to the porch, and that plaintiff's injury, if any, was proximately caused by the wearing of such hobble skirt.

For a second and further defense, defendant avers that the injuries of plaintiff, if any, were suffered by reason of the wearing of a tight, hobble skirt, and the proximate cause thereof was the contributory negligence of the plaintiff.

For a third separate answer, defendant asserts that plaintiff realized and appreciated any danger or risk in attempting to step down from the ladder while wearing such hobble skirt, and assumed such risk.

For a fourth defense, defendant avers that plaintiff's fall from the stepladder was purely accidental without any negligence or fault on the part of defendant.

The reply put in issue all the affirmative defenses of the answer, except as alleged in plaintiff's complaint. After the jury was impaneled to try the cause, defendant by leave of court filed a fifth separate answer and defense as follows:

## "I.

"That during all the time hereinafter mentioned, the defendant has been a Benevolent corporation, organized and existing under and by virtue of the laws of the State of Oregon, with its principal place of business at Portland, Oregon, and during all the times hereinafter mentioned, has been conducting and operating a home for the old men and women belonging to the Independent Order of Odd Fellows and for the orphan children of the members of said order, and for the benefit of the members of said order, and said home is known and designated as the Odd Fellows Home of Oregon.

## "II.

"That said Odd Fellows Home is owned, operated and conducted without profit of any kind whatsoever, and is maintained by assessment made upon the lodges and membership of the State of Oregon and that the home and grounds above alleged and all of the money and property whatsoever is held by the Odd Fellows

Home in trust and not otherwise, for the maintenance, support and care of the old men and women of the order and for the maintenance, support, care and education of the orphan children of members of the order and for the purpose of caring for said old members and said children in sickness and furnishing them with medical attention, nurse and hospital services without any compensation therefor, and solely in a benevolent way and manner and without any profit whatsoever and that in carrying on said work and purposes, said Odd Fellows Home is a Benevolent and eleemosynary corporation and is trustee only and no more, for all of the property and all of its conducts and acts for the membership of said order in general in the state, and that therefore said Odd Fellows Home, as above alleged, is not liable in damages herein, and was such corporation at all of the times hereinbefore alleged."

The fifth further and separate defense being admitted by the plaintiff, no reply thereto was made. Whereupon the court rendered judgment for the defendant upon the facts admitted by the pleadings, as for want of a reply to the answer. The plaintiff appeals from such judgment.    AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. J. O. Stearns, Jr.,* and *Mr. Sidney J. Graham.*

For respondent there was a brief with oral arguments by *Mr. Henry S. Westbrook* and *Mr. Fred J. Meindl.*

BEAN, J.—This action is brought under the Employers' Liability Act, Laws of Oregon, 1911, p. 16, entitled,

AN ACT "Providing for the protection and safety of persons engaged in the construction, repairing, alteration, or other work, upon buildings, bridges, viaducts, tanks, stacks and other structures, or engaged in any work upon or about electrical wires, or conduc-

tors or poles, or supports, or other electrical appliances or contrivances carrying a dangerous current of electricity; or about any machinery or in any dangerous occupation and extending and defining the liability of employers in any or all acts of negligence, or for injury or death of their employees, and defining who are the agents of the employer, and declaring what shall not be a defense in actions by employees against employers, and prescribing a penalty for a violation of the law."

While it is alleged in plaintiff's complaint that the work plaintiff was engaged in, at the time of the injury, involved a risk or danger to plaintiff, this of course is a conclusion which will depend upon the facts as set forth in the complaint. It will be noticed that the complaint asserts that the stepladder in question was light, narrow and unstable, without sufficient base; the weight, width or height is not stated. It is complained that the ladder was not equipped with a handrail or other appliance whereby plaintiff might steady herself. It is not alleged that the stepladder was more than twenty feet from the ground or floor so as to require the same to be "provided with a strong and efficient safety rail or other contrivance so as to prevent any person from falling therefrom," as provided in the employers' liability law, see clauses 15 to 19 of the act as outlined in *Camezind* v. *Freeland Furniture Company* in an opinion by Mr. Justice HARRIS, rendered June 18, 1918. The act does not command that a stepladder two or three feet in height shall be protected by a safety rail. It will be remembered that the height of the ladder is not stated in the complaint, therefore the averment of the answer in that regard is not in conflict therewith.

Turning now to the general clause of the Employers' Liability Act, it should be noticed that the facts set

forth in plaintiff's primary pleading do not show that
the business in which defendant was engaged, namely,
conducting a home for old men and women and orphan
children, and in which plaintiff was employed at the
time of the injury, involved a risk or danger inherent
therein either to the plaintiff or the public.   The first
part of Section 1 of the law refers to persons engaged
in the construction or repairing, etc., of any building
or other structure, or the operation of machinery or
the manufacture or transmission of electricity, or the
use of any dangerous appliance or substance or ma-
chinery, and to shafts, wells, floor openings and simi-
lar places of danger and specifies definitely certain
precautions to be taken for the safety of employees
and the public.   None of these things entered into the
work in which plaintiff was employed.   The general
clause following requires that:

"All owners, contractors and other persons having
charge of, or responsible for any work involving a risk
or danger to the employees or public, shall use every
device, care and precaution which it is practicable to
use for the protection and safety of life and limb."

1, 2. It is manifest that this general clause, provid-
ing for care and precaution to be used in work involv-
ing a risk or danger, refers to employments additional
to those mentioned in the first part of the section, which
are similar in kind as to having danger inherent
therein, or involved in the same, or combined inextri-
cably, or nearly so, therewith.   The act, as its title
indicates, embraces within its scope what is usually
termed dangerous or hazardous employment.   It is a
general rule of statutory construction that where gen-
eral words follow an enumeration of persons or things,
by words of a particular and specific meaning, such
general words are not to be construed in their widest

extent, but are to be held as applying only to persons
or things of the same general kind or class as those
specifically mentioned, unless the legislative intent
clearly appears to the contrary: Black on Interpreta-
tion of Laws, p. 141; 2 Lewis' Sutherland Statutory
Construction, § 360. In a certain sense, there is a risk
or danger in a person going up or down an ordinary
flight of stairs in a home, but this is not the kind of
risk or danger embraced within the meaning of the
statute. It would hardly be said that a person's work
which required him to go up and down ordinary stairs,
or hang clothing on a line using a common stepladder
two or three feet in height not inherently defective,
and with no particular danger involved therein, would
be likely to harm or would be perilous, hazardous or
unsafe. The whole language of the act denotes that
the kind of employment thereby protected is that
which is beset with danger, the hazardous, dangerous
employments similar to those enumerated in the act,
or which under the circumstances or manner in which
it is being executed is rendered dangerous, within the
meaning of the act: See *Olds* v. *Olds,* 88 Or. 209 (171
Pac. 1046, 1048). We therefore hold that the case, as
delineated by the complaint and the admitted portions
of the answer, does not come within the employers'
liability law.

The next question involved is whether, under the
admitted facts of the pleadings, the defendant is an-
swerable for a common-law liability. The question in-
volved was before this court in the case of *Hill* v.
*Tualatin Academy,* 61 Or. 190 (121 Pac. 901), refer-
ence is hereby made for a full discussion of the sub-
ject to the opinion therein by Mr. Justice MOORE. It
was said at page 198 of the opinion:

"In the case at bar it is evident upon principle and
authority that, since the University holds all its prop-

erty in trust for charitable purposes, it is not liable for the alleged negligent acts of its officers or employees, under the circumstances detailed, and that in directing a verdict in its favor no error was committed.''

3, 4. An action may be maintained against an officer of a charitable institution to recover damages for an injury caused by the negligence of such person, but the action must be against him in his individual and not in his corporate capacity so that if a recovery is awarded it will not be discharged from the trust funds: 11 C. J., p. 374. See, also, *Currier* v. *Trustees of Dartmouth College,* 117 Fed. 44, 54 C. C. A. 430; *Farrigan* v. *Pevear,* 193 Mass. 147 (78 N. E. 855, 118 Am. St. Rep. 484, 8 Ann. Cas. 1109, 7 L. R. A. (N. S.) 481); *Parks* v. *Northwestern University,* 218 Ill. 381 (75 N. E. 991, 4 Ann. Cas. 103, 2 L. R. A. (N. S.) 556); 15 Am. & Eng. Ency. Law (2 ed.), 762; 6 Cyc. 975. The ''Tualatin Academy and Pacific University'' was incorporated by a special act of the legislature in 1854. It is admitted in the instant case that the Odd Fellows Home of Oregon is conducted without profit of any kind and is maintained by assessment made upon the lodges and membership of the State of Oregon; that all the property of the institution is held by the Odd Fellows Home in trust and not otherwise, for the maintenance of the old men and women of the order, and the care and education of the orphan children of members of the order; that the defendant is a benevolent, eleemosynary corporation and is trustee only. It is organized under Chapter V, Title XLIV, L. O. L., for the organization of religious, charitable and educational corporations, Section 6796, which specifies the powers of such corporations, provides as follows:

''Upon the making and filing for record articles of incorporation as herein provided, the person or per-

sons subscribing the same, and his or their successor or successors in office, by the name or title specified in the articles, shall thereafter be deemed a body corporate, with continual perpetual succession, and shall have power to acquire and possess by donation, gift, or purchase, and to retain and enjoy, property, real, personal, and mixed, and the same to sell, grant, convey, or rent, or otherwise dispose of at pleasure; *provided, however, that no part of the resources of said corporation shall ever be used for any other than the object herein named. * * "*

The restriction as to the use of the resources in this section is to the same effect as the statute under which the Tualatin Academy, etc., was incorporated, which was considered in *Hill* v. *Tualatin Academy,* 61 Or. 190 (121 Pac. 901). It seems, the reason for the enactment of the proviso quoted is that the liability of charitable organizations for the torts of their agents has been the subject of much confusion and apparent conflict among the courts passing on the question of the liability of a charitable corporation for the negligence or other torts of its officers or servants. The reason most generally assigned for denying the liability of such organization for the negligence of its officers and servants, is that to permit the institution to be held liable for the neglect of its employees, would authorize the diversion of its funds intrusted to it from the purpose for which they were derived. There are two general classes of opinions where the liability is denied. First. Those cases in which the injury was received by a person who at the time was a recipient of the charity. Second. Those cases in which the injury was inflicted on a stranger. Many of the courts have declared generally that those administering a trust fund are not responsible for the torts of their agents because damages for such torts cannot be paid from the trust fund. However, liability is recog-

nized as to strangers and servants to be compensated from such trust funds. In one jurisdiction, it has been held that a charitable corporation is liable for the torts of its servants the same as any private individual or other corporation: See 5 R. C. L., p. 374, et seq., §§ 121–124.

Under these conditions of the decisions of the courts, the wisdom of the legislature is apparent in making the proviso that no part of the resources of such a corporation shall ever be used for any other than the object named in the statute.    The meaning of this proviso is also made clear on account of the same circumstances.    The restriction is sweeping without any exception whatever.

Laying aside the adjectives and conclusions, outside of the complaint as to the want of a safety rail and rubber nubs and other safety devices and precautions, which it is alleged could have been provided by defendant without interfering with the use of the ladder, and which plaintiff claims should have been furnished and taken in order to comply with the requirements of the employers' liability law, there is nothing left suggesting negligence. Only the pure accident of catching plaintiff's skirt on the stepladder is disclosed. The mere fact remains that plaintiff in the performance of her duties was required to use a small stepladder in hanging clothes on a line.    It is not claimed, and we do not think that it could be claimed that this alone would constitute actionable negligence.    According to the facts admitted in the pleadings in this case, defendant is not liable for damages.

The facts set forth in the complaint do not bring the cause within the provisions of the Employers' Liability Act, requiring the use of the devices mentioned and the strict care and precautions thereby enjoined.

There is no cause of action stated in the complaint. The trial court was right in granting a judgment in favor of defendant. The judgment is therefore affirmed.          AFFIRMED.    REHEARING DENIED.

McBRIDE, C. J., MOORE and JOHNS, JJ., concur.

