Argued March 24, reargued in banc June 24, affirmed October 4, 1921.

# BOTTIG *v.* POLSKY.

### (201 Pac. 188.)

**New Trial—Trial Court may Grant in Case of Mistake Preventing Proper Presentation of a Cause, Although No Exception was Taken.**

1. A trial judge has power, when, by reason of some misapplication of the principles of law, or in consequence of some inadvertence to which attention has not been called, if satisfied that a party has not had his cause properly presented, to set aside a judgment rendered upon a verdict and grant a new trial when such action does not violate Const. Amend., Article VII, Section 3 (see Laws 1911, p. 7), providing that no fact tried by jury shall be otherwise re-examined unless the court can affirmatively say that no evidence supports the verdict. (Per HARRIS, MCBRIDE, and BROWN, JJ.)

**Trial—Injunction Based on No Evidence Held Erroneous.**

2. Where there was no evidence that an employer failed to provide sufficient number of men to pile barrels in a boxcar, an instruction that plaintiff was entitled to a verdict if the employment involved a risk or danger, and if defendant failed to provide a sufficient number of men to do the work, is erroneous. (Per HARRIS, MCBRIDE, and BROWN, JJ.)

**Statutes—General Words Following Enumeration of Persons and Things not to be Construed in Their Widest Sense, but as Applying to Persons or Things Specifically Mentioned.**

3. General words following an enumeration of persons or things, or by words of a particular and specific meaning, are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned, unless the legislative intent clearly appears to the contrary. (Per HARRIS, MCBRIDE, and BROWN, JJ.)

**Master and Servant — Dangerous Employment Within Employers' Liability Act Defined.**

4. Employers' Liability Act (Or. L., §§ 6785–6791), requiring persons having charge of work involving a risk or danger to employees to use every practicable safety device, does not apply to every employment in which an injury occurs, but applies only when the employment, considered as a class, is inherently dangerous, or if conditions are such as to render inherently dangerous a work which ordinarily is not dangerous; and the prescribed duty rests upon the employer if the work involves a risk or danger, whether caused by machinery or otherwise. (Per HARRIS, MCBRIDE, and BROWN, JJ.)

**Master and Servant—Dangerous Employment Within Statute Held Question for Jury.**

5. In an action based on Employers' Liability Act (Or. L., §§ 6785–6791), requiring persons in charge of work involving a risk or danger

to employees to use every safety device, *held,* on the evidence as to plaintiff's injury by a barrel, which fell on his hand while piling barrels in a boxcar, that the question whether the manner of doing the work involved risk or danger, so as to render the employment inherently dangerous within the statute, was a question for the jury. (Per HARRIS, MCBRIDE, and BROWN, JJ.)

Pleading—Complaint Should be Construed Most Strongly in Favor of Pleader Where Defendant Answered After Overruling of Demurrer to Complaint.

6. Where defendant answers after his demurrer to complaint is overruled, complaint is to be construed most strongly in favor of the pleader, and will be sustained where the complaint contains a defective statement of the cause of action, but not where it fails to state a cause of action. (Per BEAN, J.)

Pleading—Demurrer to Complaint Waived by Filing Answer.

7. A defendant, by filing an answer and denying the gist of the allegations of the complaint, and affirmatively alleging contributory negligence and assumption of risk, waives his demurrer to the complaint. (Per BEAN, J.)

Pleading—In Action for Negligence, Failure to Allege a Specific Act of Negligence or Duty Omitted is Waived by Answer Over and Cured by Verdict.

8. In action for negligence, failure to allege any specific negligent act done or duty omitted is a mere defective statement of the cause of action, and is waived by answering and cured by verdict. (Per BEAN, J.)

Master and Servant—Allegation Held to Imply Negligence of Employer Piling Barrels in Boxcar.

9. In an action based on Employers' Liability Act for negligent injury in loading a boxcar with barrels, an averment that defendant was negligent in not using every device, care, and precaution which it was practicable to use for the safety and protection of life and limb, clearly implies that it was practicable to pile the barrels, so that the upper one would not fall down. (Per BEAN, J.)

Master and Servant—Burden on Employee to Show Practicability of Safety Device.

10. In an action under the Employers' Liability Act (Or. L., § 6785), providing that persons having charge of work involving a risk or danger to employees or the public shall use every device, care, and precaution which it is practicable to use for the protection and safety of life and limb, the burden is on plaintiff to show the practicability of using such a device. (Per BEAN, J.)

Master and Servant—Assumption of Risk no Defense Under Statute.

11. Where plaintiff performed work in conformity to orders of defendant's foreman, who had charge of the work, defendant is re-

---

11. Assumption of risk by servant performing act under orders of master, see note in 7 Ann. Cas. 435.

sponsible for the manner in which the work was done, and is not entitled to the defense of assumption of risk under Employers' Liability Act (Or. L., § 6789). (Per Bean, J.)

**New Trial—Setting Aside Verdict and Judgment Held Error.**

12. Where the complaint stated a cause of action for injuries to servant, which was substantiated by evidence, and defendant understood cause of action, and was not surprised during trial, and the jury was correctly charged concerning the issues, it was error for the trial court to set aside verdict and judgment on ground that instructions should not have been given under the Employers' Liability Act. (Per Bean, J.)

**Pleading—Allegation of Negligent Injury Held Conclusion.**

13. In an action for negligent injury, an allegation that the injury was caused by negligence of defendant in requiring plaintiff to place barrels in a boxcar, one barrel upon another, and to stack the barrels up as high as the roof of the car would permit, and in not using every device, care, and precaution which it is practicable for the protection of employees as required by law, in that defendant did not have sufficient employees engaged in the work, and directed that the work be done in such a manner that it was possible for barrels to roll down from the top of the pile and fall upon the person engaged in the work, is defective in that it does not show by any statement of fact, or otherwise than as embodied in the pleader's averment of a legal conclusion, what it was practicable to do and was not done. (Per Burnett, C. J.)

**Master and Servant—Piling Barrels in Boxcar not Employment Within Employers' Liability Act—"Risk" or "Danger."**

14. Loading a boxcar with empty barrels in the usual and ordinary manner does not involve a "risk" or "danger" within the meaning of the Employers' Liability Act (Or. L., §§ 6785–6791). (Per Johns, J.)

From Multnomah: J. P. Kavanaugh, Judge.

In Banc.

Joe Bottig, an employee of Fred Polsky, was injured while loading empty barrels in a boxcar. Bottig sued Polsky and recovered a verdict and judgment for $1,000. On motion of the defendant the trial court set aside the verdict and judgment, and granted a new trial. The plaintiff appealed.

Fred Polsky was a dealer in new and second-hand barrels and kegs and did business under the assumed business name of Panama Cooperage Company. His

place of business was on Front Street in Portland. From time to time Polsky shipped barrels by railway. On March 5, 1919, a railway boxcar was placed at the corner of Salmon and Front Streets in order that Polsky might load it with barrels. The car could not be placed for loading prior to 8 P. M., because to have placed the car there before that hour would have interfered with trains; and hence it was necessary that the loading be done after 8 P. M. and in the nighttime. The work of loading was begun soon after 8 P. M. and completed about midnight. Bottig was injured about 11:30 P. M.

Lanterns were used to light the inside of the car. According to evidence offered in behalf of defendant three good lanterns were used; but according to the testimony of plaintiff "it was awful dark," for he explained "sometimes we had one or two lamps in there, coal oil lamps, and the glass was black and dirty like a coal sack." The plaintiff testified that "they was always in a hurry"; and in explanation of this testimony it is claimed that the evidence supports the statement that the plaintiff and the other three men who were helping to load the car had other employment in the daytime and on that account were anxious to expedite the work of loading; and, furthermore, it is said that it was necessary to complete the work before a certain time so that there would be no interference with traffic on the railroad. Most if not all of the barrels had once contained oil and consequently many of them were greasy on the outside. Although all the barrels were not the same in height and circumference, some being longer than others and varying in circumference, most if not all of them were fifty gallon barrels. The car when loaded contained about 300 barrels.

The barrels were hauled on a truck from the defendant's place of business to the car and there loaded through a door located at the middle of the car and in the side of it. The car was loaded in the manner generally followed when loading barrels into a car. One end of the car was filled "up to" the door and then the other end was loaded "up to the door"; and finally the middle was filled. The barrels were placed in tiers. Each tier, when completed, contained four rows. The barrels in the first three rows were placed upright or end on end; but the proximity of the roof of the car made it necessary to lay the barrels in the fourth row on their sides.

At the time when plaintiff was hurt both ends of the car had been filled and the plaintiff and those working with him were engaged in filling the middle of the car. A tier of four rows had been piled "up to the door"; next to this tier was one containing two rows; and next to the latter was one or more tiers each of which at that time contained but one row. E. J. Bundy, the truck driver, delivered the barrels from the truck into the car. John P. Schuster, who was in charge of the work, was inside the car. Nicholas Skow worked inside of the car part of the time, and during the remainder of the time he helped Bundy.

Bottig was piling barrels on the tier which contained two rows. According to the testimony of Bottig, both Schuster and Skow were inside of the car receiving barrels from Bundy and delivering them to Bottig; but there is also evidence to the effect that at the time of the injury Skow was on the truck. At any rate, Bottig had received a barrel from Skow or Schuster and had placed it on the tier

containing two rows and, with one hand resting on
the barrel which he "put on last," was waiting to re-
ceive the next barrel to be delivered to him, when a
barrel fell from the fourth row of the adjoining tier,
which had been piled "up to the door," striking his
hand and severely injuring it.

The plaintiff claims that the falling of the barrel
was caused by the fault of the defendant. Polsky
says that the plaintiff himself negligently caused the
barrel to fall. The complaint consists of four para-
graphs and the prayer. The first paragraph merely
tells who the defendant is, what his business is, and
where he does business. The second paragraph in-
forms us that the plaintiff was employed by the
defendant and directed to assist in loading empty
barrels in a boxcar, and that while so engaged the
plaintiff was injured by a barrel which fell upon his
hand. The third paragraph is as follows:

"That said injury to plaintiff was caused by the
carelessness, recklessness and or negligence of ·de-
fendant in requiring plaintiff to place said barrels in
said boxcar, one barrel upon another, and to stack
said barrels up as high as the roof of said car would
permit, and in not using every device, care and pre-
caution which it is practicable to use for the safety
and protection of life and limb of defendant's em-
ployees, as required by law, in that defendant did not
have sufficient employees engaged in said work, and
directed that said work be done in such manner that
it was possible for barrels to roll down from the top
of the pile and to fall upon the persons engaged in
said work, and directed said work to be done in such
manner as to be dangerous to those employed therein.
That defendant well knew of the danger involved in
loading said barrels in said car at that time in the
manner in which he required said work to be done,
and failed to take proper and necessary precautions
to prevent such accidents."

The fourth paragraph declares that plaintiff expended $20 for medical services and that he will be compelled to spend more money for a surgical operation; that he was unable to work for several weeks and on that account lost wages; and that he has been permanently damaged in a specified sum.

The defendant filed a motion to require the plaintiff to set out in paragraph three of his complaint—

"Wherein the defendant did not use 'every device, care and precaution which it is practicable to use for the safety and protection of defendant's employees as required by law,' and further set out in said paragraph III wherein the defendant 'failed to take proper and necessary precautions to prevent such accidents.'"

The court denied the motion, and also overruled a demurrer which the defendant subsequently filed.

After the demurrer was overruled the defendant filed an answer denying paragraphs three and four and a portion of paragraph two of the complaint. For a first further and separate defense the defendant alleged that the plaintiff was guilty of contributory negligence; and for a second further and separate defense the defendant pleaded assumption of risk.

The plaintiff replied by denying each of the two separate defenses pleaded by the defendant.

The trial judge instructed the jury concerning the Employers' Liability Act and also concerning the rules of common-law negligence. Under the charge given by the court the jurors were permitted to return a verdict for the plaintiff if they found sufficient facts to bring the transaction within the Employers' Liability Act, or, if the Employers' Liability Act did not apply, to return a verdict on the theory of

common-law negligence in the event sufficient facts existed to create a common-law liability.

The court in its charge pointed out the specifications of negligence appearing in the complaint and instructed the jury:

"So you have three charges of negligence, and these only: that there were not sufficient employees there; second, that he directed the work to be done in a manner that it was possible for the barrels to roll down from the top of the pile and fall upon the employees engaged in said work; and third, that he directed the work to be done in such manner as to be dangerous to the employees."

The court further instructed the jury:

"If you find, I say, by a preponderance of the evidence that he was guilty of negligence in either of those particulars (the three particulars specified), and further find by a preponderance of the evidence that such negligence, if any, was the proximate cause of the injury to this plaintiff, and if you further find that these provisions if corrected, that is to say, if he employed more men or if he piled the barrels differently or in some other way, if that would not have interfered with the efficiency of the work, then your finding upon that charge of negligence should be in favor of the plaintiff."

After a verdict was returned in favor of the plaintiff, the defendant moved for a new trial and assigned as grounds: (1) Refusal of the court to grant a judgment of nonsuit; (2) refusal to direct a verdict for the defendant; (3) refusal to instruct the jury that the Employers' Liability Act did not apply; (4) a refusal to give four requested instructions.

The trial court allowed the motion for a new trial, and signed and filed a writing which reads thus:

"A careful review of the allegations of the complaint convinces me that these allegations are insuffi-

cient to justify the court to submit the controversy to the jury under the Employers' Liability Act; that the instructions relating to the Employers' Liability Act were erroneous, and that a new trial should be granted."

According to the testimony of Bottig the barrel which fell upon his hand was placed in the tier from which it fell by Schuster and Bottig acting together and under specific instructions given by Schuster. There was evidence offered in behalf of plaintiff to the effect that the offending barrel when placed in position could have been made safe if one employee had held it there until the adjoining tier had been built up three rows high; or that it would have been safe and practicable if the defendant had built each of the two tiers three rows high before placing the barrel in position, for by so doing the barrel would have been supported by two tiers instead of one. Schuster says that before the barrel fell he called the attention of Bottig to it and directed Bottig to take the barrel down from the tier, and that thereupon Bottig, who was very strong, jammed the barrel under the roof of the car so that when Schuster tested it he found the barrel to be lodged tightly and "sound." Schuster further says that soon after testing the barrel and finding it to be "sound," Bottig received a barrel to be placed upon the tier containing two rows, and that in attempting to pile this barrel in the last-mentioned tier Bottig got the chime of the barrel wedged between the two tiers and then attempted to extricate it by using it as a pry on the tier containing the four rows; that he, Schuster, directed Bottig to desist from prying but notwithstanding his directions Bottig continued to use the wedged barrel as a pry with the result that the barrel

which had previously been tested and found to be lodged "sound" was displaced and fell upon the plaintiff's hand.                              AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Henry L. Lyons.*

For respondent there was a brief over the names of *Messrs. Bernstein & Cohen,* with an oral argument by *Mr. Bernstein.*

HARRIS, J.—1. After the adoption of the constitutional amendment known as Article VII, Section 3, it was held that the granting of a new trial was not a matter of discretion and—

"that an order for the rehearing of a cause could not be sanctioned except when the court had committed some error, which if properly excepted to or seasonably called to the attention of the court and the motion denied, would have been sufficient cause for a reversal of the judgment if it had been brought up for review; and that under such circumstances the trial court upon motion or *sua sponte* possessed adequate power and was authorized"

to correct the error, which it had committed, by granting a new trial. In 1918 this rule was broadened in *Archambeau* v. *Edmunson,* 87 Or. 476, 487 (171 Pac. 186), where it was said:

"The rule thus established ought in our opinion to be enlarged so that, when by reason of some misapplication of the principles of law to which no exception has been taken, or in consequence of some inadvertence to which attention has not been called, if the court is satisfied that a party has not had his cause properly presented, justice which should be dispensed in all cases sanctions the setting aside of a judgment rendered upon a verdict and the granting of a new trial, when such action of the lower court

does not violate Article VII, Section 3, of the Constitution of Oregon respecting the *quantum* of evidence."

In that precedent there was a general verdict and a judgment for the plaintiff. The defendant moved to set aside the judgment rendered for the plaintiff and for the entry of a judgment for the defendant on the ground that the general verdict was inconsistent with the special findings. The trial court granted the defendant's motion; but subsequently the trial court concluded that its charge to the jury was not sufficiently specific, and although the charge to the jury was not challenged in any manner, the court upon its own motion set aside the second judgment and ordered a new trial. Although, if the question were *res integra,* it might be difficult to reach the conclusion adopted in *Archambeau* v. *Edmunson,* the rule of *stare decisis* is now applicable; for the doctrine announced through Mr. Justice MOORE in *Archambeau* v. *Edmunson* was followed in an opinion by Mr. Justice JOHNS speaking for this court in *Cathcart* v. *Marshfield,* 89 Or. 401 (174 Pac. 138), and was approved in *Duniway* v. *Hadley,* 91 Or. 343, 346 (178 Pac. 942), in an opinion written by Mr. Justice BEAN, and therefore may now be regarded as the settled law of this jurisdiction: See, also, *State* v. *Evans,* 98 Or. 214, 221 (192 Pac. 1062, 193 Pac. 927). In actual practice, the rule promulgated in *Archambeau* v. *Edmunson* will be an aid rather than a hindrance in the administration of real justice; and on that account the doctrine of *stare decisis* is especially applicable.

2. As previously explained the court instructed the jury that the plaintiff was entitled to a verdict if the defendant was guilty of negligence in any one of

the three particulars mentioned in the complaint. The jurors were informed not once but several times that the plaintiff was entitled to a verdict if the employment involved a risk or danger and if the defendant failed to provide a sufficient number of men to do the work. This instruction, when viewed in the light of the evidence, was clearly erroneous; for the reason that there was not a word of testimony to sustain the allegation that the defendant did not employ a sufficient number of men; but upon the contrary every witness who testified upon the subject, including the plaintiff himself, affirmatively declared that there was a sufficient number of men. It had been the practice of the defendant to have three or four, but never more than four men, to do the work. The plaintiff had between November, 1918 and March 5, 1919, helped to load cars with barrels on as many as ten different occasions and on none of those occasions were there more than four men. Neither the plaintiff nor any other witness gave any evidence containing even the slightest suggestion that more than four men ought to have been employed; but upon the contrary the record informs us that the plaintiff as well as other witnesses unequivocally declared that there was a sufficient number of employees present; for the following question was asked and answer given on the direct examination of Bottig:

"Q. I will ask you then, Mr. Bottig, how many men should they have had there to do the work so that the work would be safe and the barrels would not fall down?

"A. He could do that with the men he got there, he got plenty of men to pile them in a safe condition, not take chances on it."

The witness then explained that one of the men ought to have been directed to hold the barrel in place until the adjoining tier was piled three rows high.

In the memorandum filed by the trial judge he explained that a new trial should be granted because, among other reasons, "the instructions relating to the Employers' Liability Act were erroneous." It may be assumed for the purposes of this discussion that most of the instructions relating to the Employers' Liability Act were correct; but it is clear that the instructions concerning the number of employees were erroneous and prejudicial to the defendant. Manifestly, the case was not properly presented when the jurors were told that they could return a verdict based upon a specification of negligence which was not only without the support of a scintilla of evidence but was expressly disaffirmed by the plaintiff himself as well as every other witness who testified upon the subject. If the defendant had requested and the trial court had refused to charge the jury that there was no evidence to support the allegation that an insufficient number of men was employed, and if the defendant had excepted to such refusal, or, if the defendant had excepted to the instructions actually given concerning this specification of negligence; then in either situation every judicial opinion written by this court having any application whatever to the subject would without a single exception require upon an appeal a reversal of the judgment obtained by the plaintiff, for the plain reason that the instruction was extremely prejudicial to the rights of the defendant. We cannot possibly know whether the verdict was or was not based on the allegation concerning the number of men. If the verdict was in part based upon

that allegation, then to that extent the verdict was without support. If the verdict was based solely upon that allegation, then the verdict was wholly without support. Under the rule expressed in *Archambeau* v. *Edmunson* the trial court properly allowed a new trial.

It is argued that the instructions requested by the defendant included a requested instruction which proceeded upon the theory that the jury could return a verdict based upon the allegation concerning an insufficient number of men; and that therefore the defendant invited the court to tell the jury that the Employers' Liability Act applied and that a verdict could be based upon the allegation relating to the number of employees. The defendant moved for a judgment of nonsuit, contending that the cause did not come within the embrace of the Employers' Liability Act; and he consistently maintained this contention throughout the trial. The defendant requested an instruction that the Employers' Liability Act did not apply. The defendant contended that there was no liability whatever; but he also argued that if there was any liability at all it was only because of common-law negligence. It is true that the defendant requested an instruction that the only specifications of negligence were the three already pointed out, and it is also true that the defendant requested the court to charge the jury that—

"these are the only grounds of negligence that you are to take into consideration";

but it is likewise true that the instructions requested by the defendant and refused by the court were so worded as to require a finding that all the specifications had been sustained by the evidence before a

verdict could be returned for the plaintiff. The instructions requested by the defendant were in the conjunctive and not in the disjunctive. The defendant did not ask the court to give any instruction which would have permitted a verdict based solely upon the allegation concerning the number of employees. It is true that the attention of the court was not directed to the fact that there was no evidence to sustain the allegation relating to the number of men; but it is also true that the situation was one which came clearly within the doctrine of *Archambeau* v. *Edmunson,* and hence the trial court was entirely warranted in granting a new trial.

3, 4. In the Circuit Court and also in this, the appellate court, the defendant insisted that the Employers' Liability Act (Sections 6785 and 6791, Or. L.) does not apply. If the defendant is liable at all under the statute it is only because of the following omnibus clause with which Section 6785, Or. L., is concluded:

"And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

This clause which is sometimes referred to as the "and generally clause" has been construed by this court, speaking through Mr. Justice BEAN in *O'Neill* v. *Odd Fellows' Home,* 89 Or. 382, 389 (174 Pac. 148), to apply only to employments which are inherently

dangerous; and, since we deem it peculiarly appropriate here, we now quote at length from that opinion:

"It is manifest that this general clause, providing for care and precaution to be used in work involving a risk or danger, refers to employments additional to those mentioned in the first part of the section, which are similar in kind as to having danger inherent therein, or involved in the same, or combined inextricably, or nearly so, therewith. The act, as its title indicates, embraces within its scope what is usually termed dangerous or hazardous employment. It is a general rule of statutory construction that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned, unless the legislative intent clearly appears to the contrary: Black on Interpretation of Laws, p. 141; 2 Lewis' Sutherland Statutory Construction, § 360. In a certain sense, there is a risk or danger in a person going up or down an ordinary flight of stairs in a home, but this is not the kind of risk or danger embraced within the meaning of the statute. It would hardly be said that a person's work which required him to go up and down ordinary stairs, or hang clothing on a line using a common stepladder two or three feet in height not inherently defective, and with no particular danger involved therein, would be likely to harm or would be perilous, hazardous or unsafe. The whole language of the act denotes that the kind of employment thereby protected is that which is beset with danger, the hazardous, dangerous employments similar to those enumerated in the act, or which under the circumstances or manner in which it is being executed is rendered dangerous, within the meaning of the act: See *Olds* v. *Olds,* 88 Or. 209 (171 Pac. 1046, 1048)."

The "and generally clause" may present itself for consideration in two aspects. There are some employments which because of their very nature, as for example working on a line carrying a high voltage of electricity, are as a class regarded as inherently dangerous; the employment when considered in the abstract and spoken of as one of different kinds of employment, without regard to any unusual conditions attending some individual case, is by most if not all persons unhesitatingly classed as a dangerous employment, because it is a kind of employment in which danger inheres; the work involves, has wrapped up in it, embraces danger. See Century Dictionary for a definition of the word "involve." See, also: Fernald on English Synonyms, Antonyms and Prepositions, pages 301 and 307. On the other hand, there are employments which when considered in the abstract, are never spoken of as dangerous employments; and yet an employment which ordinarily and generally is a nondangerous one may nevertheless, because of the presence of extraordinary and unusual conditions, be converted in some individual case into an employment inherently dangerous.

It is suggested that whenever an injury occurs it speaks for itself and declares itself to be the accomplished result of a risk evolved from the employment; and that since a risk cannot be evolved from an employment unless that employment involves that risk, it necessarily follows that such risk was involved in the employment, and that therefore the employment is within the embrace of the Employers' Liability Act. Under this view a servant who stubs his toe when ascending an ordinary flight of stairs in the

master's residence and is hurt, is engaged in an employment involving a risk or danger, because, forsooth, he was hurt. This interpretation is equivalent to saying that, regardless of the class of employment and regardless of the conditions attending an employment, the mere occurrence of an injury is irrefutable and conclusive evidence of danger, and that the employer is necessarily liable unless it appears that he has performed his duty by using every practicable care, device and precaution. Such an interpretation of the Employers' Liability Act takes notice of nothing except the single word "involving," and gives to that word a meaning which its etymology does not compel, even though the word is viewed alone and without regard to the words accompanying it; and, moreover, such an interpretation gives no heed to the purpose of the statute which is made plain by the title of the act, by the ballot title, by the argument printed in the Voters' Pamphlet and by the context of the statute. See *Turnidge* v. *Thompson,* 89 Or. 637 (175 Pac. 281), where the Employers' Liability Act is given in full together with the title of the act, the ballot title which appeared upon the ballots used by the voters, an excerpt from the argument printed in the Voters' Pamphlet, and a narrative of some additional facts shown by the official records. When the body of the act is read in connection with its title and is considered in the light of the language of the ballot title placed before the eyes of every voter in Oregon who went to the polls, and is viewed in the light of the argument appearing in the Voters' Pamphlet which was sent to every registered voter in Oregon, then, in the view of the writer, it will be impossible to expand the meaning of the statute be-

yond the boundaries marked out in *O'Neill* v. *Odd
Fellows' Home,* 89 Or. 382 (174 Pac. 148). It is now
too late to enter into any debate as to whether or not
the act applies to an employment which, although
ordinarily nonhazardous is in a given instance made
dangerous by unusual and peculiar conditions; for
that question is foreclosed by numerous precedents
and the rule of *stare decisis* applies with full force.
If, therefore, an employment considered as a class is
inherently dangerous as explained in *O'Neill* v. *Odd
Fellows' Home,* 89 Or. 382 (174 Pac. 148), or, if the
conditions in an individual case are such as to render
inherently dangerous a work which ordinarily is not
dangerous, then in either event the Employers' Lia-
bility Act applies.

5. The defendant argues that there was no machin-
ery used and that there was no need for any device,
and that therefore the statute does not apply. The
language of the statute is: "And generally" an em-
ployer having charge of "any work" involving risk
or danger shall use "every device, *care and precau-
tion.*" The inquiry to be made is: Does the work in
truth involve a risk or danger? If the work does in-
volve a risk or danger, whether caused by machinery
or otherwise, then the statute imposes a prescribed
duty upon the employer, and it then becomes perti-
nent to inquire whether that duty has been per-
formed. The element of danger may be present be-
cause of the presence of machinery; or, although
there may be a total absence of machinery, the work
may nevertheless be such as to involve danger in its
highest form. If the employment as a class is in-
herently dangerous, or, if because of the presence of
certain conditions an otherwise nondangerous em-

ployment is rendered inherently dangerous, then the Employers' Liability Act applies and it becomes the duty of the employer to use the care prescribed by the statute.  The question as to whether or not a work involves a risk or danger is generally a question of fact to be decided by a jury: *Mackay* v. *Commission of the Port of Toledo,* 77 Or. 611, 616 (152 Pac. 250); and, hence, unless as in *O'Neill* v. *Odd Fellows' Home,* 89 Or. 382 (174 Pac. 148), the court can say as a matter of law that the work does not involve a risk or danger, the question of danger should be submitted to the jury.

When measured by the record presented here the work of piling empty barrels in a boxcar, considered as a class of work, is not in general an inherently dangerous work.  If the testimony of Schuster is entirely true, then the barrel which fell upon the plaintiff's hand was, after being jammed under the roof, safe and carried with it no danger whatever until the plaintiff continued to use the wedged barrel as a pry in disobedience to the instructions of Schuster and by his own negligence the plaintiff himself caused the barrel to fall.  If, however, Bottig's version is correct, then it is a question of fact for the jury to decide whether the work was rendered inherently dangerous because of the insecure position of the offending barrel together with other attending circumstances such as the greasy condition of the barrels, poor light and the hurry required of the men. In other words, it is for the jury to say whether because of the attending circumstances and conditions the work was rendered inherently dangerous.  The defendant's contention that the Employers' Liability Act is as a matter of law inapplicable cannot be sustained.

Inasmuch as the case is to be retried it is proper to call attention to the complaint. The language of the complaint is in general terms; the pleading in a large measure consists of mere conclusions of law. The motion to make the complaint more definite and certain should have been sustained on the authority of *Cameron* v. *Pacific Lime & Gypsum Co.,* 73 Or. 510, 517 (144 Pac. 446, Ann. Cas. 1916E, 769), and *Camenzind* v. *Freeland Furniture Co.,* 89 Or. 158, 171 (174 Pac. 139). However, it is not necessary to decide whether the demurrer to the complaint should have been sustained, or whether the complaint is sufficient after verdict and judgment; but it will suffice to say that since the cause is to be remanded for a new trial it will be proper for the Circuit Court to require the complaint to be made more definite and certain. The order granting a new trial is affirmed.

AFFIRMED.

BENSON, J., not sitting.

McBRIDE and BROWN, JJ., concur.

BEAN, J., Concurring in Part With Mr. Justice HARRIS.—The motion for a new trial was based upon the grounds, (1) insufficiency of the evidence to justify the verdict, and that the same is against law, (2) errors in law occurring at the trial and excepted to by the defendant. Defendant claimed that this was not an action that came under the Employers' Liability Act. The trial court granted a new trial for the reason that the complaint was insufficient to justify submission of the case to the jury under the Employers' Liability Act, and that the instructions

relating to the Employers' Liability Act were therefore errors.

The complaint shows that the plaintiff was employed by defendant to assist in loading empty barrels in a boxcar, and while so engaged he was injured by a barrel which fell upon his left hand. The negligence of defendant is set forth as follows:

"That the injury to plaintiff was caused by the carelessness, recklessness and—or negligence of defendant in requiring plaintiff to place said barrels in said boxcar, one barrel upon another, and to stack said barrels up as high as the roof of said car would permit, and in not using every device, care and precaution which it is practicable to use for the safety and protection of life and limb of defendant's employees, as required by law, in that defendant did not have sufficient employees engaged in said work, and directed that said work be done in such manner that it was possible for barrels to roll down from the top of the pile and to fall upon the person engaged in said work, and directed said work to be done in such manner as to be dangerous to those employed therein. That defendant well knew of the danger involved in loading said barrels in said car at that time in the manner in which he required said work to be done, and failed to take proper and necessary precautions to prevent such accidents."

A demurrer was interposed to the complaint, which was overruled. Plaintiff also moved the court to require plaintiff to make the part of the complaint above quoted more definite and certain, and set out wherein the defendant did not use every device, care and precaution which it is practicable to use for the safety and protection of defendant's employees. Upon the motion being overruled, defendant answered, denying the negligence and affirmatively alleging as follows:

"That plaintiff was injured through his own fault in not obeying the directions of the man in charge of the work, and that plaintiff so placed the barrels that one rolled on him and struck his hand or fingers, and that said barrel would not have fallen had plaintiff followed the directions as to the manner in which said barrel should be placed in said car; that the injury was due wholly and entirely to the negligence of the plaintiff and without any fault on the part of the defendant or his employees."

The answer further alleges that the work was not in any respect dangerous; that plaintiff assumed the risk and that he was injured by reason of his own carelessness and negligence. Defendant's first requested instruction reads thus:

"This is an action to recover damages for negligence charged by the plaintiff against the defendant, and as there was no machinery nor any appliance used in the work that was carried on, I charge you that unless you find, from the evidence, that the employment was a dangerous one and that the defendant directed the work to be done in such a manner as to make it dangerous to the persons engaged in the work, that this action does not come within the Employers' Liability Act, and your verdict must be for the defendant."

Defendant also requested the court to charge the jury that if they found the work in which plaintiff was engaged was dangerous, but that no absolute duty to furnish any device or other equipment was incumbent upon the defendant and that plaintiff knew the risk and danger in the work itself, he assumed the risk and the verdict should be for the defendant.

The testimony tended to show that at the time of the injury plaintiff was engaged in loading old empty barrels in a boxcar. Some of the barrels had con-

tained oil or grease and were slippery. The work was done at night. The light from two or three lanterns was poor. The barrels were stacked on end three high and then the fourth barrel was crowded in on its side between the tier and the roof of the car. Mr. John P. Schuster was in charge of the work for the defendant, and assisted plaintiff to place the fourth barrel on top of the three tiers. As described in the testimony, the upper barrel being larger in the middle than at the ends, it could not be pushed in between the three barrels and the roof of the car, but projected out over where the next tier of barrels was to be piled, leaving the barrel which fell with no support except as it was wedged in between the tier of barrels and the roof of the car. Mr. Schuster testified that after they put the fourth barrel up he said to Bottig, "That barrel will have to be taken down, that may come down, safety first." He also testified that, "He [Bottig] took hold of the barrel, and jammed it right up under the roof." Mr. Schuster further stated on cross-examination, in referring to the manner in which the barrel which fell was piled:

"Well, what I told him to do, take it out, but he shoved it under the roof, and I put my hand on it, and, by gosh, it was solid.

"Q. So after you got it there and you tested it and tried it you thought it was all right.

"A. Yes, I thought it was all right."

It appears that in piling other barrels the top one was jarred loose and fell on plaintiff's hand. The testimony tended to show that if one man had held the barrel up while the other tier was placed underneath so as to support it, or if the second tier of barrels had been piled three high before the fourth barrel was placed, the barrel would not have fallen. The

testimony indicated that the men sometimes piled the second tier before they put the fourth barrel on top. There is some dispute between the plaintiff and Mr. Schuster as to the instructions given by the foreman to plaintiff. Plaintiff claims, in substance, that the foreman gave him no warning or instructions. Mr. Schuster testified to the effect that he warned the plaintiff not to hit the barrels which were under the fourth one as there was danger of its falling.

The action was brought under the Employers' Liability Act, and the court charged the jury under the provisions of that act. The first question for consideration is as to the sufficiency of the complaint. The specifications of negligence in the complaint are somewhat general, and we think could have been made more definite and certain. The complaint charges that the defendant directed the work to be done in such manner that it was possible for the barrel to roll down from the top of the pile upon the person engaged in the work, so as to be dangerous. Tersely stated, it alleges that the barrel was suspended at the top of the car without any support. This is in addition to other general allegations of negligence showing a want of care and precaution, and a failure to use every device which it is practicable to use for the safety and protection of life and limb of defendant's employees.

6. Where a defendant answers, after the overruling of his demurrer to the complaint, the complaint is to be construed most strictly in favor of the pleader, and will be sustained where the complaint contains a defective statement of a cause of action, but not where it fails to state a cause of action: *Shultz* v. *Shively,* 72 Or. 450, 453 (143 Pac. 1115); *West* v.

*Eley,* 39 Or. 461 (65 Pac. 798); *Olds* v. *Cary,* 13 Or. 362 (10 Pac. 789); *Oregon & C. R. R. Co.* v. *Jackson Co.,* 38 Or. 589, 597 (64 Pac. 307, 65 Pac. 369).

7. The defendant, by filing an answer and denying the gist of the allegations of the complaint, and affirmatively alleging contributory negligence and assumption of risk, waived his demurrer to the complaint. Defendant avers in effect that there was negligence in the conduct of the work in which plaintiff was engaged, but that it was through plaintiff's fault in not obeying directions of the one in charge in placing the barrel that rolled on to him. This leaves the disputed question as to whether or not plaintiff did the work under orders to which the plaintiff was bound to conform and did conform, and whether by reason of his having conformed to such orders the injury resulted.

8. Failure in an action for negligence to allege any specific negligent act done, or duty omitted is, in any event, a mere defective statement of a cause of action, and is waived by answering over, and cured by verdict: *Chan Sing* v. *City of Portland,* 37 Or. 68 (60 Pac. 718). A different test is applied to complaint after verdict than on a motion or demurrer. In *Minter* v. *Minter,* 80 Or. 369, 372 (157 Pac. 157), Mr. Justice Burnett states the rule thus:

"It is contended here that the allegations of the complaint are not sufficient to show a partnership. A general demurrer seems to have been filed against the complaint, but without the same having been argued to the court the defendant answered, so that the case now stands and is to be determined as upon the sufficiency of a pleading after verdict. It is said in *Bates* v. *Babcock,* 95 Cal. 479, 482 (30 Pac. 605, 29 Am. St. Rep. 133, 136, 16 L. R. A. 745, 748):

" 'Objections to a complaint which should be pointed out by special demurrer, such as uncertainty or ambiguity, are insufficient, unless so specified, to defeat a verdict against the defendant, nor can they, if overruled after having been so specified, be considered for the purpose of sustaining a judgment in his favor that was erroneously rendered after a trial upon the merits. It is only when there is in the complaint an entire absence of averment of fact essential to a recovery, so that no evidence of that fact could be received at the trial, that a judgment in favor of the plaintiff cannot be sustained; but, if the objection be merely that such fact is defectively alleged, evidence received under such averment, if sufficient, will sustain the judgment.' "

We think the complaint is a defective or general statement of a good cause of action, and that it is good after verdict.

9. It is contended by the defendant that the complaint does not show that any device could have been practically used. The averment that the defendant was negligent "in not using every device, care and precaution which it is practicable to use for the safety and protection of life and limb," clearly implies that it was practicable to pile the barrels so that the upper one would not fall down. The Employers' Liability Act is analogous to the Factory Act, Section 6738, Or. L. In several jurisdictions, under the provisions of a Factory Act, the burden is on the defendant to show that it was not practicable to use a particular device or guard reasonably calculated to prevent accident: *Reddington* v. *Blue & Raftery*, 168 Iowa, 34, 40 (149 N. W. 933); *O'Connell* v. *Smith*, 141 Iowa, 1 (118 N. W. 266); *Kimmerle* v. *Dubuque*, 154 Iowa, 42 (134 N. W. 434); *Caspar* v. *Lewin*, 82 Kan. 604 (109 Pac. 657, 40 L. R. A. (N. S.) 526); *Gross* v. *Eagle*

*Wheel Mfg. Co.,* 252 Pa. 361 (97 Atl. 457); *Camenzind* v. *Freeland Furniture Co.,* 89 Or. 158, 171 (174 Pac. 139).

10. The rule in this state is understood to be that the burden is upon the plaintiff to show the practicability of using such a device: *Cameron* v. *Pacific Lime & Gypsum Co.,* 73 Or. 510, 517 (144 Pac. 446, Ann. Cas. 1916E, 769). A strict rule as to the allegations and proof as to the practicability of performing work with care and precaution, or by the use of a certain device, should not be invoked. An employer is in a better position to show the impracticability of the use of a certain device than the employee is to prove the practicability. Moreover, there can be but little question in regard to the practicability of using care and precaution as commanded by the Employers' Liability Law. In *Quinn* v. *Hawley Pulp & Paper Co.,* 85 Or. 630, 635 (167 Pac. 571), which in principle was much like the case at bar, it was shown on the part of defendant that the material was piled in the usual way. Mr. Justice BURNETT stated, ''That the bales were stacked up in the usual way does not controvert the showing of the plaintiff. If that was the habitual method of storing the paper, the wonder is that someone was not hurt before the injury in question. If the process used was such as in fact to cause hurt to the employee, when it was practicable to obviate the danger, its long continuance does not make it less culpable.'' In the present case the defendant claims that the barrels were piled in the usual manner. It is in evidence, however, that by actual experience the second tier of barrels could be piled three high before the fourth barrel was placed on top.

The testimony indicated that the foreman took hold of the barrel with the plaintiff, and assisted him in placing it, saying, "You will have to put it up there." The Employers' Liability Act, among other things, enjoins upon all owners or persons having charge of, or responsible for, any work involving a risk or danger to the employees, to use every device, care and precaution which it is practicable to use for the protection and safety of life and limb. It will be noticed from this clause that "care and precaution" are commanded by the law equally as strong as the use of a device. We see no reason why the one is not just as essential as the other. It is true that the use of a device may include care and precaution, while care or precaution may or may not include the use of a device. In the present case there was no device such as is usually used to guard dangerous machinery, and the question in regard to a device is not involved, unless we term the third barrel which might have been placed under the barrel which fell a device. That there was a want of care and precaution in the conduct of the work is alleged, and the testimony was adduced supporting such allegation. In fact the testimony of the foreman himself showed that there was negligence in placing and allowing the barrel to remain in the precarious condition. He directed it to be put up and neglected to take it down. He neglected to put up the second tier of barrels before attempting to lay the fourth barrel on top of the tier. The testimony shows that the plaintiff, pursuant to his duty, by virtue of his employment by defendant, performed the work in conformity to the orders of Mr. Schuster, who had charge of the work. The defendant was responsible for the manner in

which the work was done under the direction of his foreman, and is not entitled to the defense of assumption of risk, according to the provisions of Section 5 of the Employers' Liability Act (Section 6789, Or. L.).

It is urged by counsel for defendant that the work did not involve a risk or danger to employees. This question is one of fact to be determined by the jury rather than a question of law: *Mackay* v. *Port of Toledo,* 77 Or. 611 (152 Pac. 250); *Paullos* v. *Grove,* 84 Or. 106 (164 Pac. 562). From the testimony adduced the jury could reasonably believe that the work was dangerous.

The want of care and precaution upon the part of the defendant, as averred in the complaint and as shown by the testimony, was much the same in principle as in the cases of *Quinn* v. *Hawley Pulp & Paper Co., supra; Reed* v. *Western Union,* 70 Or. 273 (141 Pac. 161), where a bucket of paint fell upon the plaintiff; and *Adams* v. *Albina Eng. & Machine Works,* 97 Or. 543 (192 Pac. 793), where a pile of angle irons fell upon the plaintiff. Therefore there was no error in overruling the motion for a nonsuit, and refusing to direct a verdict for defendant.

12. The action was brought, as the complaint indicates, under the Employers' Liability Act. If the complaint should be amended so as to make it more specific, the same testimony could be introduced. The defendant apparently understood the allegations of the complaint, and was in no way surprised upon the trial. The court plainly and carefully charged the jury under the provisions of the Employers' Liability Act. Among other things the jury was told that they must first find by a preponderance of the

evidence that the service in which the plaintiff was engaged at the time of the injury involved a risk and danger to plaintiff and other employees, practically as requested by defendant. The court instructed the jury in regard to common-law liability. Such charge, however, was favorable to the defendant, and gave him the benefit of the full defense of contributory negligence and the defense of assumption of risk. The complaint states a cause of action, and that the testimony substantiates the complaint. It was therefore error for the trial court to set aside the verdict and judgment.

The judgment of the Circuit Court should be reversed, and the cause remanded with directions to enter judgment upon the verdict.

BURNETT, C. J., Concurring in the Result.—13. The Circuit Court set aside a verdict and judgment for the plaintiff and ordered a new trial. I concur in the result reached by Mr. Justice HARRIS in his opinion affirming this action, for the reasons here stated.

The charge of negligence is as follows:

"That said injury to plaintiff was caused by the carelessness, recklessness and or negligence of defendant in requiring plaintiff to place said barrels in said boxcar, one barrel upon another, and to stack said barrels up as high as the roof of said car would permit, and in not using every device, care and precaution which it is practicable to use for the safety and protection of life and limb of defendant's employees, as required by law, in that defendant did not have sufficient employees engaged in said work, and directed that said work be done in such manner that it was possible for barrels to roll down from the top of the pile and to fall upon the person engaged in said work, and directed said work to be done in such manner as to be dangerous to those employed therein.

That defendant well knew of the danger involved in loading said barrels in said car at that time in the manner in which he required said work to be done, and failed to take proper and necessary precautions to prevent such accidents.''

The allegation is defective in that it does not show by any statement of fact or otherwise than as embodied in the pleader's averment of legal conclusion, what it was practicable to do, that was not done, for the protection of life and limb in the progress of the work. I am not in accord with the argument by inference at least, that the work contemplated by the Employers' Liability Act must be ''inherently'' dangerous. That is importing into the statute an element not within the legislative utterance. The words of the statute are, ''work involving a risk or danger to the employee or public.'' In the instant case, so far as the allegation is concerned at least, the plaintiff received an injury in the performance of the work in question. The danger was realized. The risk became an actuality. As the event proved, the risk or danger was involved in that particular work. It was not involved in anything else. Having been ''involved'' therein, it was evolved therefrom as an accomplished result as the work progressed. Had it not been for the work in which the plaintiff was engaged, the hurt would not have happened. The risk of the injury would not have been ''involved,'' but for that very work.

The statute does not allude to suspected or foreseen danger. It is intended to apply to danger which actually produces an injury, whether the risk be anticipated or unsuspected. Whether the work did produce an injury is of course a question of fact. But if

101 Or.—36

it is to be taken as granted that the plaintiff was hurt in the performance of that work, then indeed *res ipsa loquitur;* the work did involve a risk or danger. No one has yet pointed out where the risk was "involved," unless it was in the work in question. In such an instance, the case would turn upon whether or not everything practicable to use for the protection and safety of life and limb had been employed in carrying on the work. It is the duty of the plaintiff in such cases to allege what was practicable to use, and aver that the defendant did not use the same.

The demurrer to the complaint ought to have been sustained, and for this reason I concur in the result of affirming the action of the Circuit Court in setting aside the judgment rendered for the plaintiff.

JOHNS, J., Concurring in the Result.—14. It is my personal opinion that the loading of a box-car with empty barrels in the usual and ordinary manner does not involve a risk or danger within the meaning of the Employers' Liability Act, but under the rule of *stare decisis* I feel bound by the decisions of this court cited in the opinion of Mr. Justice HARRIS, and for such reason I concur in his result.